704 So.2d 169 (1997)
Guillermo FOSTER, Appellant,
v.
STATE of Florida, Appellee.
No. 96-3315.
District Court of Appeal of Florida, Fourth District.
December 17, 1997.
*170 Richard L. Jorandby, Public Defender, and Allen J. DeWeese, Assistant Public Defender, West Palm Beach, for appellant.
Robert A. Butterworth, Attorney General, Tallahassee, and Ettie Feistmann, Assistant Attorney General, West Palm Beach, for appellee.
STEVENSON, Judge.
Appellant, who was tried by jury and convicted of unarmed robbery, challenges both the denial of his pre-trial motion to suppress evidence as well as an alleged denial of his right to counsel. We find no error in the court's disposition of the motion to suppress, but we reverse the conviction because we agree that appellant was improperly denied privately-retained counsel of his choice to represent him at trial.[1]

Proceedings
On September 15, 1994, appellant was charged by information with one count of robbery with a weapon. The following month, he was declared insolvent and assigned a public defender. About fifteen months later, on January 22, 1996, appellant was being represented by assistant public defender Randy Haas, who appeared at a hearing on appellant's motion to suppress evidence. Jury selection was scheduled to begin immediately following the hearing on the motion to suppress; however, when the motion was denied, appellant pled guilty to the charged offense.
The next day, appellant wrote a letter to Judge Trachman, complaining that his public defender had provided him with ineffective assistance at the suppression hearing; specifically, appellant alleged that Mr. Haas had failed to impeach witnesses with supposedly contradictory deposition testimony. In response, Judge Trachman allowed appellant to withdraw his guilty plea. In addition, the judge discharged Randy Haas and, on February 22, 1996, appointed special public defender Ronald Dallas to represent appellant.
Almost five months later, on July 9, 1996, appellant and Mr. Dallas appeared in court. Jury selection was scheduled to begin that day. Mr. Dallas informed the trial court that he had not yet received a copy of the transcript of the suppression hearing, which he needed in order to properly prepare his cross-examinations. The prosecutor explained that the court reporter had not yet prepared the transcript.
Mr. Dallas stated that appellant wished to address the court, and that he had "no idea" what appellant would say. Appellant proceeded to complain that Mr. Dallas was providing ineffective representationthat Mr. Dallas never came to see him to discuss the case, never assisted appellant in filing various motions, would not take appellant's phone calls, and that appellant was being forced to "run up" his mother's phone bill by calling Mr. Dallas. Although there is no indication in the record that appellant previously voiced these concerns to the trial court, appellant told the judge:
I don't feel he's going to represent me to the fullest. That's the reason why I addressed the Court before you scheduled this hearing for trial. I addressed the Court and told you that my family hired me a private attorney, and I would like for him to take over these cases.

Now, you're denying me the right to a fair trial and to the counsel of my request, of my choice. I never picked Mr. Dallas to *171 be my attorney. The Court is the one that gave him to me. I simply told him I did not want an attorney from the courts anymore. That's the reason I hiredmy family sent the money to hire the attorney for me to have a fair trial, which I'm entitled to. Right now I'd like to fire Mr. Dallas. I don't have nothing against him, but I want to fire him because he's not going to represent me to the fullest.
(emphasis added).
Mr. Dallas responded that he had discussed the case with appellant and that he, Dallas, had an understanding of the case. However, Mr. Dallas continued:
However, I do agree with him. He wants somebody else to represent him, and he should have that right to have somebody else represent him.
The court replied:
Unfortunately, this case is now two years old. I can't let it get any older. Today is Tuesday, July 9th, 1996. I have set this case for trial. If I can't try this, I have no other cases to try this afternoon because I announced last week that this case would be tried this week. We are going to try the case.
Appellant reiterated that he would like Mr. Dallas to withdraw so that his privately-retained attorney could step in. Appellant added, "I don't care if you schedule my trial for next Monday, but I want the counsel that I think will represent me to the fullest." The judge repeated that "we are going to go forward."
At this point, Harris Lowenthal, appellant's privately-retained counsel, addressed the court. He reminded the court that he had advised the judge on the previous day that he wished to make an appearance on appellant's behalf. Mr. Lowenthal requested "reasonable time" to allow him to prepare for trial and file some motions. The court expressed its concern that this case would "drag on." The judge pointed out that Mr. Lowenthal had "no standing here," and that "[t]here's no reason for [the substitution of counsel]. This case has been set for trial, and it's going to trial today."
Mr. Dallas, court-appointed defense counsel, then reminded the court that he still required the transcript of the suppression hearing to prepare for trial. Mr. Dallas stated that he would need "some time" to review the transcript, and that "maybe it would be in the best interest of everybody if this matter was delayed until a transcript was obtained."
The prosecutor then spoke up:
I think the Court should make a finding that the defendant is not entitled to fire Mr. Dallas, nor was he entitled to fire Mr. Haas.
. . . . .
[I]n my view, the defendant in this case has been manipulating the case so that it never gets to trial.
The court made no such findings.
The trial court then declared that it would conduct a Nelson inquiry. The court found "no reasonable cause to believe that Mr. Dallas is rendering ineffective representation." The judge then warned appellant:
... Mr. Dallas will not be replaced by another attorney, and if you want to discharge Mr. Dallas, you could do so but then you're going to be without an attorney.
After conferring with Mr. Dallas and Mr. Lowenthal, appellant asked whether Mr. Lowenthal could work alongside Mr. Dallas. The court said, "No. Mr. Dallas will be your attorney if you're going to have an attorney." Appellant then decided to "leave [Mr. Dallas] on the case ... [s]ince I really have no choice." The trial court then found that appellant's decision to leave Mr. Dallas on the case was "freely, voluntarily, intelligently, and knowingly entered."
The trial judge stressed that "one of his concerns" with allowing Mr. Lowenthal to take over appellant's case was that the time it would take Mr. Lowenthal to acquaint himself with it would delay the two-year-old case even longer. However, Mr. Dallas explained that, in his opinion, the case was "simple" and "straightforward," and that Mr. Lowenthal could be ready by "Monday or the following week." The judge repeated yet again that he was "pushing this case forward" *172 because it was two years old and because the "witnesses want to get this over with and their memories only diminish as time passes."
The trial court then agreed, with the consent of the prosecutor, to reset the trial for the following Monday, July 15, 1996, to allow Mr. Dallas time to obtain and review the transcript of the suppression hearing. On the following Monday, the trial was again postponed because the State's fingerprint expert was unavailable. Trial finally began on July 30, 1996. Appellant was found guilty of robbery, a lesser included offense of the charged crime of robbery with a weapon, and sentenced to thirty years as an habitual offender.

Discussion
The Sixth Amendment protects the right of criminal defendants to be represented by the attorney of their choosing. See Wheat v. United States, 486 U.S. 153, 108 S.Ct. 1692, 100 L.Ed.2d 140 (1988). While this right is not unlimited, we find that the trial court abused its discretion in this case by denying appellant the opportunity to be represented by the private counsel retained by his family on his behalf.

The right to select counsel: private vs. court-appointed counsel
We agree with appellant that the trial court's Nelson inquiry, in which the judge determined that Mr. Dallas was rendering adequate representation, was unwarranted. Under Nelson v. State, 274 So.2d 256 (Fla. 4th DCA 1973), trial judges must conduct an inquiry into pre-trial allegations that court-appointed counsel is rendering ineffective representation solely to determine if the defendant is entitled to other court-appointed counsel. Nelson instructs:
If reasonable cause for such belief appears [i.e., that court-appointed counsel is not rendering effective assistance], the court should ... appoint a substitute attorney.... If no reasonable basis appears for a finding of ineffective representation, the trial court should ... advise the defendant that if he discharges his original counsel, the State may not thereafter be required to appoint a substitute.
Id. at 259.
Thus, under Nelson, a defendant always retains the right to discharge court-appointed counsel. The purpose of the Nelson inquiry is to determine whether the defendant will be entitled to other court-appointed counsel following the discharge. See Branch v. State, 685 So.2d 1250, 1252 (Fla. 1996)("A Nelson inquiry is appropriate when an indigent defendant attempts to discharge current, and obtain new, court-appointed counsel prior to trial due to ineffectiveness.")(emphasis added), cert. denied, ___ U.S. ____, 117 S.Ct. 1709, 137 L.Ed.2d 833 (1997). If the trial judge decides that court-appointed counsel is rendering adequate representation, the indigent defendant is not entitled to other appointed counsel; rather, the defendant faces the Nelson ultimatum keep the original court-appointed lawyer or represent himself.
The Nelson ultimatum does not violate the Sixth Amendment right to select one's own counsel, as the United States Supreme Court has rejected the notion that "impecunious defendants have a Sixth Amendment right to choose their counsel." See Caplin & Drysdale, Chartered v. United States, 491 U.S. 617, 624, 109 S.Ct. 2646, 2652, 105 L.Ed.2d 528 (1989). The Court elaborated:
The Amendment guarantees defendants in criminal cases the right to adequate representation, but those who do not have the means to hire their own lawyers have no cognizable complaint so long as they are adequately represented by attorneys appointed by the courts. "[A] defendant may not insist on representation by an attorney he cannot afford."
Id. (quoting Wheat, 486 U.S. at 159, 108 S.Ct. at 1697).
In this case, appellant was not seeking different court-appointed counselhe sought only to be represented by the attorney retained privately by his family on his behalf. Thus, it was not relevant to determine whether appellant would be entitled to other court-appointed counsel. Consequently, the *173 quality of Mr. Dallas' representation was irrelevant, and the Nelson inquiry was without a purpose.
For the same reason, the State misplaces its reliance on Wilder v. State, 156 So.2d 395 (Fla. 1st DCA 1963), which the State cites for the proposition that appellant had no right to discharge competent court-appointed counsel and select a specific attorney. It is clear that the defendant in Wilder sought different court-appointed counsel. See id. at 396. We agree that an indigent defendant has no Sixth Amendment right to select his court-appointed counsel or to demand more than one court-appointed counsel. In this case, however, appellant sought the representation of a lawyer privately hired by his family on his behalf.

Limits on the right to select private counsel
Although a criminal defendant has a Sixth Amendment right to select his own private attorney, the right "is circumscribed in several important respects." See Wheat, 486 U.S. at 159, 108 S.Ct. at 1697.[2] While the Sixth Amendment affords criminal defendants a "presumption in favor of counsel of choice," id., "where `considerations of judicial administration' supervene, the presumption in favor of counsel of choice is rebutted and the right must give way," United States v. Voigt, 89 F.3d 1050, 1074 (3d Cir.), cert. denied, ___ U.S. ____, 117 S.Ct. 623, 136 L.Ed.2d 546 (1996). Our supreme court has agreed that
a defendant does not have an absolute right to a particular lawyer and that it is within a trial court's discretion to deny a defendant's request for particular counsel when there is a "countervailing public interest in the fair and orderly administration of justice."
Bundy v. State, 455 So.2d 330, 348 (Fla.1984) (quoting United States v. Salinas, 618 F.2d 1092, 1093 (5th Cir.1980)). For example, a defendant's invocation of the right to choose his own attorney may not be made in bad faith or "for the sake of arbitrary delay or to otherwise subvert judicial proceedings." See Holley v. State, 484 So.2d 634, 636 (Fla. 1st DCA 1986); accord Cartwright v. State, 565 So.2d 784, 785 (Fla. 5th DCA 1990) (agreeing that a "defendant's right to obtain private counsel is not a license to delay proceedings and waste the trial court's time.").
The State contends on this appeal, as it did below, that appellant's attempt to substitute Mr. Dallas with private counsel was merely an attempt to delay these proceedings. Thus, the State argues that the trial court did not abuse its discretion in refusing to allow the substitution. The State cites those cases where an eleventh hour request for a substitution of counsel was held to be properly denied. For example, in Bowman v. United States, 409 F.2d 225 (5th Cir.1969), the appellate court affirmed the trial court's refusal to substitute counsel and grant a continuance to allow the defendant to procure other counsel where these requests were made on the morning of trial. The appellate court noted that the appellant had failed to raise any specific deficiency in counsel's performance, that appointed counsel was ready for trial, and that the defendant had given no reason for waiting until the morning of trial before bringing his dissatisfaction to the trial court's attention. Id. at 226. Under these circumstances, the court was apparently skeptical of the defendant's motivation in seeking the continuance and substitution:
We and other courts of appeals have repeatedly made clear that the right to counsel "cannot be ... manipulated so as to obstruct the orderly procedure in the courts or to interfere with the fair administration of justice." ... Judges must be vigilant that requests for appointment of a new attorney on the eve of trial should not become a vehicle for achieving delay.
Id. at 226-27 (quoting United States v. Llanes, 374 F.2d 712, 717 (2d Cir.1967)); accord United States v. Silva, 611 F.2d 78 (5th Cir.1980) (affirming the denial of the defendant's motion made on the day before trial since "[l]ast minute requests are disfavored" *174 and the right to counsel of choice "may not be used for purposes of delay").
The preceding cases are distinguishable for numerous reasons. First, in each of the above-cited cases, the appellate court had apparently satisfied itself that the defendant's belated motions for substitution and continuance were made for the purpose of simply delaying the trial. In this case, the trial court made no such determination, even when prompted by the prosecutor. The trial court repeatedly stated that its basis for denying the substitution was to avoid any further delay in the trial, but the court placed no blame on appellant for the fact that this case was already two years old, nor did the court voice any concern over appellant's motives in seeking the substitution.
Second, appellant's colloquy with the trial judge on the morning of trial reveals that appellant had previously discussed with the court at a prior hearing his desire to have his privately-retained attorney take over. Mr. Lowenthal himself had also previously spoken with the judge about representing appellant. Thus, it appears that this matter was not raised for the first time on the morning of trial.
Third, and most importantly, the denial of the substitution was arbitrary since it was made ostensibly for the purpose of advancing the trial, but the trial court immediately proceeded to grant Mr. Dallas, court-appointed counsel, a continuance to further prepare for trial. Mr. Dallas had suggested that appellant's private attorney would be ready to take on this "straightforward" case by the following Monday. Then, immediately after denying the motion for substitution in the name of trial-advancement, the trial court reset the trial for the following Monday anyway since court-appointed counsel needed time to obtain and review a transcript of the suppression hearing in order to prepare for trial. Accordingly, the denial of the motion for substitution was an arbitrary decision which in no way furthered the trial court's objective of moving the trial forward. See Linton v. Perini, 656 F.2d 207, 209 (6th Cir.1981)("A trial court, acting in the name of calendar control, cannot arbitrarily and unreasonably interfere with a client's right to be represented by the attorney he has selected."). Under these circumstances, the trial court abused its discretion in refusing to grant appellant's motion for substitution.
We reject the State's claim that this case should be affirmed in any event because appellant has failed to demonstrate prejudicial error. The issue in this case was whether appellant was denied the right to be represented by the privately-retained lawyer of his choicean error which may defy a demonstration of prejudice since the desired attorney is precluded from taking any action in the case. Accordingly, courts have held this error to be prejudicial per se. See Fuller v. Diesslin, 868 F.2d 604 (3d Cir.1989); United States v. Diozzi, 807 F.2d 10 (1st Cir.1986); United States v. Washington, 797 F.2d 1461 (9th Cir.1986).
REVERSED AND REMANDED FOR A NEW TRIAL.
FARMER, J., and ANGELOS, CYNTHIA G., Associate Judge, concur.
NOTES
[1] The motion to suppress was decided prior to the time appellant sought to substitute counsel and was, therefore, not affected by the court's ruling in regard to the counsel issue.
[2] Some of the limitations listed in Wheat, although not relevant in this case, include that an advocate who is not a member of the bar may not represent clients (other than himself); that a defendant may not insist on representation by an attorney he cannot afford or who for other reasons declines to represent the defendant; and that a defendant may not insist on the counsel of an attorney who has a previous or ongoing relationship with an opposing party. See id.