FARMER, Judge.
In Chambers v. State, 682 So.2d 615 (Fla. 4th DCA 1996), we reversed defendant’s conviction because of error in failing to allow a valid peremptory challenge of a juror. On retrial after remand, defendant was again convicted. In this appeal, he argues that the trial court erroneously admitted the results of pre-release breath alcohol tests administered under section 316.193(9), Florida Statutes (1993). In our recent decision in State v. Talty, 692 So.2d 936 (Fla. 4th DCA 1997), we held that the admission of such test results is a denial of due process. The ques *665 tion in this case is whether the error was prejudicial or harmless. We conclude the latter and affirm.
Chambers was charged with felony driving under the influence.[1] The arresting officer, Officer Bakke, was the state’s first witness. He is a nine year veteran of the Lake Worth Police Department, having risen to the rank of homicide investigator. He has also been a licensed emergency medical technician for over nine years, during which he has frequently encountered intoxicated patients while on ambulance duty. His police academy education included 40 hours instruction on DUI enforcement and 68 hours on field sobriety “tasks.”[2] He is now an instructor on field sobriety tests. During his training on the operation of the Intoxilyzer 5000, he was given additional training in anatomy and the physiology of alcohol iñ the human body.
On the day in question, he was returning to the station after a midday lunch when he saw defendant driving his car southbound in the northbound lane. After a block or so, defendant swerved back into the southbound lane, and the officer followed him for a while. He swerved again in and out of the lane a few times and braked erratically. After an improper turn, Bakke pulled defendant over and asked for the usual papers. Defendant fumbled in his wallet and placed his registration on the seat beside him. Fumbling some more, he mumbled that he could not find his registration. Bakke described defendant’s speech as very slurred and barely understandable. He had an odor of alcohol about him which grew stronger as he spoke. His eyes were bloodshot; his stare vacant. The officer also found a cold, open container of beer,' a quarter to a third full, in the ear.
Bakke asked defendant to perform three field sobriety tests. He explained the first test three times to defendant before he appeared to understand it. Defendant was unable to maintain the initial stance during the instructions; he was unable to walk in the heel-to-toe fashion as instructed; he could not count his steps out loud, as instructed; and he took more steps than stated. During the one-leg stand test, he used his arms for balance in spite of being instructed not to do so, and continued to lower and raise his foot while counting, also contrary to instructions. On the final test, he failed to follow the commands and never successfully touched the tip of his nose. Officer Bakke did' not administer any other tests because he concluded that defendant was doubtlessly drunk, that it was unsafe for him to be driving, and that he should be arrested.
Defendant was then taken to the police station wheré Officer Pepper asked him to give breath samples for analysis. The proceedings with Officer Pepper were videotaped. Defendant refused to give the sample. The videotape was played for the jury. The prosecutor described the tape thus during closing argument:
*666 “You can hear [defendant’s] slurred speech. You can hear [defendant’s] lack of comprehension, his insistence on staying on one subject and not listening to what is being told to him, comprehending it and acting upon it — something you have to do when you drive.”[3]
The court also admitted, as we earlier indicated, the pre-release breath alcohol test results. Defendant offered no evidence of his own.
The state’s closing argument is but four pages long, three of which are devoted to arguing the significance of Officer Bakke’s testimony. Only one page is devoted to the breath test results. As to Bakke the defendant argued that he was impeached on how many times he instructed defendant for the third roadside sobriety test. As regards the videotape, he argued that the jury should not hold it against him that he refused to take the breath test.
The court instructed the jury, as it must, that the state may prove the crime of driving under the influence in one of two ways, either of which is sufficient to convict. The first method is to show that defendant was under the influence of alcohol to such an extent that his normal faculties were impaired. The second method is to show a blood alcohol level of .08.
Defendant does not make any serious attempt to argue that there is insufficient evidence to convict under the impairment alternative. The details of Officer Bakke’s testimony and the videotape of defendant’s own condition shortly after the arrest are more than enough evidence of impairment. While the blood alcohol level test results were improperly admitted, there is nothing in the record to suggest that this evidence was made the centerpiece of the state’s case. The prosecutor did not argue that the jury should focus its attention of the test results alone. Indeed, the primary emphasis of the state’s closing argument was that defendant’s own conduct was the clearest possible evidence that he was — as the prosecutor put it — “just plain, old fashioned drunk.”
In finding the error harmless in this case,[4] the attorneys for the state should not infer that we will be willing to do so whenever they are successful in adducing this improper evidence. We will carefully examine the record in every case to make our own determination as to whether the violation has prejudiced the defendant.
AFFIRMED.
WARNER, J., and OWEN, WILLIAM C., Jr., Senior Judge, concur.

. Section 316.193(1), Florida Statutes (1993), provides:
"A person is guilty of the offense of driving under the influence and is subject to punishment as provided in subsection (2) if such person is driving or in actual physical control of a vehicle within this state and:
(a) The person is under the influence of alcoholic beverages, any chemical substance set forth in s. 877.111, or any substance controlled under chapter 893, when affected to the extent that his normal faculties are impaired; or
(b) The person has a blood or breath alcohol level of 0.08 percent or higher.”
Subsection 316.193(2)(b) provides that any person convicted of four or more violations under the statute is guilty of a third degree felony.

. The word "tasks” has apparently been adopted as the euphemism for "tests,” in light of our decision in State v. Meador, 674 So.2d 826, 833 (Fla. 4th DCA 1996), where we commented:
"Reference to the exercises by using terms such as 'test,' 'pass,' ‘fail,’ or ‘points,’ however, creates a potential for enhancing the significance of the observations in relationship to the ultimate determination of impairment, as such terms give these layperson observations an aura of scientific validity. Therefore, such terms should be avoided to minimize the danger that the jury will attach greater significance to the results of the field sobriety exercises than to other lay observations of impairment.” [c.o., e.s.]
The defendant’s objection to the use of "test” by Officer Bakke was not well taken in view of our limitation to the use of such terms by "laypersons,” i.e., nonexpert witnesses. As Officer Bakke clearly qualified as an expert on the subject matter, there would have been nothing improper in describing the exercises he conducts as "tests.”

. Defendant has not included the videotape as part of the record on appeal.

. Because the error in this case involves a constitutional violation, we have applied the harmless error test of State v. DiGuilio, 491 So.2d 1129 (Fla.1986), in which the state has the burden of showing that beyond a reasonable doubt the error was harmless, rather than the provisions of section 924.051(7), Florida Statutes (1997), under which the defendant has the burden in a direct appeal of demonstrating prejudicial error.