730 So.2d 769 (1999)
Billy COMER, Jr., Appellant,
v.
STATE of Florida, Appellee.
No. 98-883.
District Court of Appeal of Florida, First District.
March 23, 1999.
*771 Nancy A. Daniels, Public Defender, and Paula S. Saunders, Assistant Public Defender, Tallahassee, for Appellant.
Robert A. Butterworth, Attorney General; and Giselle Lylen Rivera, Assistant Attorney General, Tallahassee, for Appellee.
BROWNING, J.
Billy Comer appeals his conviction for burglary of a dwelling, during which a battery was committed (Counts One and Three); aggravated battery (Count Two); and resisting arrest without violence (Count Four). Comer contends that the trial court reversibly erred in failing to conduct an adequate Nelson[1] inquiry when he moved to discharge his court-appointed attorney, and in excluding defense witness Eddie Deveaux without conducting a proper Richardson[2] inquiry into the defense's discovery violation and without considering less restrictive sanctions. We find no abuse of discretion in the trial court's denial of Comer's motion to discharge counsel. Augsberger v. State, 655 So.2d 1202 (Fla. 2d DCA 1995). However, given the lower tribunal's failure to conduct an adequate Richardson inquiry, and the State's failure to demonstrate that the error is harmless beyond a reasonable doubt, we are constrained to reverse the judgment and sentence and remand for a new trial.

The Nelson Issue
Immediately prior to jury selection, Comer moved to discharge his court-appointed attorney, Mr. Ratzlaff, who was an assistant public defender. Comer complained that counsel was not rendering effective representation and was not communicating with him. In Nelson, 274 So.2d at 256 the defendant, who was found guilty of robbery, moved to vacate his judgment and sentence on the grounds that his court-appointed attorney had seen him on only one occasion, that counsel was a personal friend of the robbery victim, that the attorney had suggested that Nelson plead guilty, and that after refusing to plead guilty, Nelson asked the trial court (prior to the commencement of trial) to dismiss appointed counsel. The trial court acceded to Nelson's request to dismiss his attorney but refused his request to appoint a successor. As a result, Nelson had to stand trial without assistance of counsel. In the appeal, the Fourth District Court addressed the appropriate procedure to be followed by a trial court to protect an indigent's Sixth Amendment right to counsel in a criminal prosecution where, before the commencement of the trial, the defendant moves to discharge appointed counsel. Id. at 258. In language describing what henceforth became known as a Nelson inquiry, the district court set out the proper steps to be taken by the trial court:
[W]here a defendant, before the commencement of trial, makes it appear to the trial judge that he desires to discharge his court appointed counsel, the trial judge, in order to protect the indigent's right to effective counsel, should make an inquiry of the defendant as to the reason for the request to discharge. If incompetency of counsel is assigned by the defendant as the reason, or a reason, the trial judge should make a sufficient inquiry of the defendant and his court appointed counsel to determine whether or not there is reasonable cause to believe that the court appointed counsel is not rendering effective assistance to the defendant. If reasonable cause for belief appears, the court should make a finding to that effect on the record and appoint a substitute attorney who should be allowed adequate time to prepare the defense. If no reasonable basis appears for a finding of ineffective representation, the trial court should so state on the record and advise the defendant that if he discharges his original counsel the State may not thereafter be required to appoint a substitute. See Wilder v. State, Fla.App. 1963, 156 So.2d 395, 397. If the defendant continues to demand a dismissal of his court appointed counsel, the trial judge may in his discretion discharge counsel and require the defendant to proceed to trial without representation by court appointed counsel.
*772 Id. at 258-59. Concluding that Nelson's right to counsel was not adequately protected when he moved to discharge court-appointed counsel, the district court quashed the order on the motion to vacate and remanded with instructions to the trial court to grant the motion to vacate and to provide Nelson with a new trial as well as representation by court-appointed counsel. Id. at 259. The Supreme Court of Florida has approved the Nelson procedure. Hardwick v. State, 521 So.2d 1071, 1074-75 (Fla.), cert. den., 488 U.S. 871, 109 S.Ct. 185, 102 L.Ed.2d 154 (1988).
Comer contends that the trial court erred in failing to conduct an adequate Nelson inquiry once he put the court on notice of his complaints. After questioning by the trial court, Comer persisted in his claim and indicated that he would like to hire another lawyer because Comer's relatives "have a little money." The State correctly notes that Comer's request never triggered the requirements of Nelson, which requires trial courts to inquire into pretrial allegations of ineffective assistance of counsel "solely to determine if the defendant is entitled to other court-appointed counsel." Foster v. State, 704 So.2d 169, 172 (Fla. 4th DCA 1997); Branch v. State, 685 So.2d 1250 (Fla. 1996). Comer's comments indicate that his family was financially able and wished to hire private counsel, so that the trial court was not required to conduct any further inquiry with regard to a court-appointed successor.
Even assuming arguendo that Comer's allegations were to be addressed on their merits, we conclude that all of his claims were merely general and conclusory, i.e., facially insufficient, to require an inquiry under Nelson. First, Comer alleged that his lawyer had made hardly any "kind of arrangements." When pressed for details, Comer generally complained that his attorney had not let him know anything. These are mere conclusions. Davis v. State, 703 So.2d 1055, 1058-59 (Fla. 1997) (March 1994 motion alleging that defendant did not feel he was being adequately represented by court-appointed counsel and had not heard anything from him since November 1993 consisted of ambiguous, generalized expressions of dissatisfaction that did not rise to formal allegations of incompetence, and defendant's silence regarding his complaints after his attorney detailed the work he had done in this capital case led to reasonable belief that defendant felt that trial court had adequately addressed his concerns); Branch, 685 So.2d at 1252; Lowe v. State, 650 So.2d 969, 975 (Fla. 1994) ("As a practical matter, a trial judge's inquiry into a defendant's complaints of incompetence of counsel can be only as specific and meaningful as the defendant's complaint."); Parker v. State, 570 So.2d 1053 (Fla. 1st DCA 1990) (defendant's allegations that counsel would not meet with him and had failed to discuss legal implications of motions filed on his own behalf, and that counsel and he had personality conflict, lacked sufficient factual specificity). Second, Comer alleged that counsel had come to the jail only once. Without more, this allegation is insufficient. See Rosemond v. State, 433 So.2d 635, 636 (Fla. 1st DCA 1983) (following convictions for three counts of conspiracy to sell cocaine, defendant's allegation in Rule 3.850 motion that defense counsel had consulted with him only seven times, for ten minutes each, was facially insufficient because brevity of consultation is not ground for post-conviction relief). Third, Comer alleged that when the jailers called at Comer's behest, his attorney did not want to talk to him on the telephone. When the trial judge informed Comer that his lawyer represented many clients and talked to them when he needed to, Comer conceded that he did not feel that counsel would not fully represent him. At the trial court's request, defense counsel responded that he had taken full discovery, had taken depositions, and had discussed the case with Comer in person and on the telephone a number of times so that the defense was prepared to go to trial. Given this record, we find no abuse of discretion in the lower court's handling of Comer's allegations.

The Richardson Issue
The State's informations comprised four counts. Count One charged Comer with unlawfully entering or remaining in Kimberly Crum's apartment residence with the intent to commit battery or some other offense, in *773 the course of which he assaulted or battered Johnny "Jody" Dawson. Count Two alleged that Comer did unlawfully commit a battery upon Dawson by striking the victim with a board with exposed nails. Count Three alleged that Comer unlawfully entered or remained in Crum's apartment with the intent to commit a battery or some other offense, in the course of which he assaulted or battered Crum herself. Count Four alleged that Comer unlawfully resisted, obstructed, or opposed Patrolman Lee Langley in the lawful execution of a legal duty, i.e., while Langley was trying to arrest him. All of the charged offenses occurred on October 13, 1997.
The State's evidence indicated that on the day in question, Comer had called Crum (with whom Comer had a three-year-old son) and told her that he was getting out of jail. Comer had asked Crum: "Doesn't it feel like your heart just stopped?" During the evening of the same day, while Crum entertained guests at home, Comer suddenly broke through a window and entered the apartment without knocking on the door and without receiving permission. Dawson, who was a guest, headed toward the kitchen after hearing a window breaking. Dawson testified that, without provocation, Comer came around a corner and unexpectedly struck him on the head with a board, causing a wound that required twelve stitches. Crum and her guests fled outside and, 5-8 minutes later, observed Comer jumping a fence and heading back in the direction of Crum's apartment. Later that night, when the police asked Crum to return to her residence to answer some questions and to lock up the apartment, she and Tamara and another friend went upstairs to assess the damage. As Crum pulled back a curtain in the bedroom, Comer suddenly stepped out from a niche and grabbed her shoulder and neck as Crum pushed him away and escaped down the stairs. Clayton testified that after Comer ran out from a corner, scaring Crum, Clayton grabbed Comer, who then hit her in the jaw. Officer Langley testified that as he was taking photographs downstairs at the damaged apartment, he heard Crum screaming upstairs. He looked up and saw Comer and Crum struggling on the stairs and then observed Comer striking Clayton. The patrolman grabbed Comer from behind and fought him to the ground as Comer struggled with him. When Comer turned around and grabbed Langley's service revolver, Deputy Rodney Smith helped to subdue and handcuff Comer, who then was arrested. Significantly, Crum testified that Comer did not have a key to her residence, had never been to the apartment in question, and did not have permission to enter it.
At the close of the State's case-in-chief, the defense moved for a judgment of acquittal, which was denied. When defense counsel then offered the testimony of Eddie Deveaux, the prosecutor objected on the following ground:
Your Honor, I was informed by Mr. Ratzlaff here a little while ago an hour or so ago that he had a witness by the name of Mr. Deveaux who his client had advised him today that Mr. Deveaux was going to testify to the scenario in which he, Mr. Deveaux and [Appellant], were in this apartment earlier in the day. Or at least that's how it was represented to me by Mr. Ratzlaff that that would be Mr. Deveaux's testimony. Mr. Deveaux had not been disclosed as such a witness prior to this. The fact is that the defense had not listed any witnesses. Earlier I had talked to Mr. Ratzlaff approximately a week or so ago and asked him about witnesses and Mr. Ratzlaff at that time was considering [an] involuntary intoxication defense, and to that he might use Mr. Deveaux and the substance of his testimony was that they had ... [Appellant] had been drinking and I advised Mr. Ratzlaff if that was the case and that was what the substance of his testimony would be that I would not object to that, and may not object today if he was being called for that purpose, but having been advised today that he would be called for an entirely different purpose there is no involuntary intoxication defense being put on today and he would be called primarily as ... to go to another entire issue all together [sic]. In learning about it today for the first time, the State does object to him coming and testifying after that.
*774 The prosecutor told the trial court that he had attempted to speak to Deveaux, but the prospective witness refused to talk. Without further inquiry, the trial court announced that Deveaux would be precluded "from testifying as to those issues." As a result of this ruling, which was tantamount to the court's excluding the witness altogether, the defense rested.
Comer argues that under the circumstances, the trial court reversibly erred by failing to conduct an adequate Richardson inquiry into the defense's discovery violation and failing to consider less restrictive sanctions than the exclusion of the witness. Smith v. State, 372 So.2d 86 (Fla. 1979) (where defendant called witness whose name inadvertently was not included on witness list, in violation of Rule 3.220, and State objected to introduction of witness' testimony, trial court reversibly erred by sustaining objection and excluding testimony without further inquiry). The State, on the other hand, relies on the general rule that a trial court has broad discretion regarding the exclusion of a witness. Donaldson v. State, 656 So.2d 580, 581 (Fla. 1st DCA 1995) (although trial court has discretion to order exclusion of witness, "this extreme remedy" should not be invoked until after court has conducted adequate inquiry). In Richardson, the Supreme Court of Florida held that when the State seeks to call a witness in violation of discovery rules, the need for the trial court to conduct an inquiry is triggered, and "the court's discretion can be properly exercised only after the court has made an adequate inquiry into all of the surrounding circumstances." 246 So.2d at 775. Clearly, the Richardson requirements apply also where the defense committed the discovery violation. Brazell v. State, 570 So.2d 919, 921 (Fla. 1990); Smith, 372 So.2d at 88. The State's specific objection to the defense's calling Deveaux, on the grounds that the witness' name was not listed and the defense was offering him for a different purpose from that which defense counsel had verbally indicated to the prosecutor earlier, was sufficient notice to the trial court to trigger an investigation of a discovery violation of Florida Rule of Criminal Procedure 3.220(d) (setting out circumstances in which a defendant has an obligation to "furnish to the prosecutor a written list of the names and addresses of all witnesses whom the defendant expects to call as witnesses at the trial or hearing"). M.N. v. State, 724 So.2d 122, 23 Fla. L. Weekly D2538 (Fla. 4th DCA 1998); Sears v. State, 656 So.2d 595 (Fla. 1st DCA 1995) (after defense counsel interposed general objection, trial court reversibly erred by failing to conduct Richardson hearing to determine whether defendant's oral statements, the substance of which the State had not disclosed during discovery, were properly admitted into evidence); Duarte v. State, 598 So.2d 270 (Fla. 3d DCA 1992) (trial court reversibly erred by failing to conduct adequate Richardson inquiry after defense announced its intent to call previously undisclosed witness); Baker v. State, 522 So.2d 491 (Fla. 1st DCA 1988).
"The purpose of a Richardson inquiry is to ferret out procedural, rather than substantive, prejudice." Wilcox v. State, 367 So.2d 1020, 1023 (Fla. 1979). In Sears, we said:
Once the asserted discovery violation was brought to the court's attention, the trial judge was required to conduct an inquiry, rule on whether a violation occurred, and determine whether the evidence was admissible.
656 So.2d at 596. Richardson contemplates that "[t]he inquiry into the circumstances of a discovery violation should address whether the violation was inadvertent or willful, trivial or substantial, and whether it caused prejudice or harm to the opposing party." Miller v. State, 636 So.2d 144, 149 (Fla. 1st DCA 1994); Richardson, 246 So.2d at 775; Patterson v. State, 419 So.2d 1120, 1122 (Fla. 4th DCA 1982). In assessing procedural prejudice, the trial court must determine, first, whether the discovery violation precluded the aggrieved party from adequately preparing for trial, and second, what is the proper sanction to invoke for the discovery violation. Smith, 372 So.2d at 88; Wilcox, 367 So.2d at 1023. In the case at bar, the lower tribunal summarily excluded the proposed testimony of Deveaux without conducting any inquiry. Therefore, the issue of *775 procedural prejudice was never properly addressed. This was error. L.W. v. State, 618 So.2d 349 (Fla. 2d DCA 1993) (without supporting factual findings in accordance with Richardson requirements, exclusion of witness previously undisclosed on defense's witness list was too severe a sanction).
"In a criminal case, the exclusion of a defense witness for a discovery violation implicates a defendant's sixth amendment right to present witnesses as well as the fundamental right to due process." M.N. v. State, 724 So.2d 122, 23 Fla. L. Weekly at D2538; Taylor v. Illinois, 484 U.S. 400, 108 S.Ct. 646, 98 L.Ed.2d 798 (1988). A trial court's failure to conduct a Richardson inquiry is subject to harmless error analysis. State v. Schopp, 653 So.2d 1016, 1021 (Fla. 1995); C.D.B. v. State, 662 So.2d 738, 741 (Fla. 1st DCA 1995) (harmless error analysis is necessary where defense's violation of discovery rule results in exclusion of defense witness without adequate Richardson inquiry). Where the error is of a constitutional nature, the State has the burden to prove harmlessness beyond a reasonable doubt. Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967); State v. DiGuilio, 491 So.2d 1129, 1135 (Fla.1986); Gurganus v. State, 451 So.2d 817, 823 (Fla.1984) ("The proper test is whether there is a reasonable possibility that the lack of the evidence complained of might have contributed to the conviction or, in other words, was the error harmless beyond a reasonable doubt."); Chambers v. State, 708 So.2d 664, 666 n. 4 (Fla. 4th DCA 1998). In Austin v. State, 461 So.2d 1380, 1381 (Fla. 1st DCA 1984), we stated:
[T]he severe sanction of witness exclusion for failure to timely comply with the rules of procedure should be a last resort and reserved for extreme or aggravated circumstances, particularly when the excluded testimony relates to critical issues or facts and the testimony is not cumulative.
Where the trial court in Austin failed to make any finding or determination on prejudice and made no effort to use any reasonable means short of witness exclusion to overcome any such prejudice, we reversed and remanded for a new trial. 461 So.2d at 1382-83.
The State asserts that the inquiry preceding the exclusion of witness Deveaux was satisfactory and that his exclusion was warranted. Alternatively, the State contends that any error arising from the trial court's failure to conduct a full Richardson inquiry is harmless, at most. After carefully reviewing the record, we cannot find any basis to support the State's position as to this issue. The prosecutor's objection was sufficient to trigger the need for a fuller inquiry. Kimberly Crum had testified that Comer did not have a key, had never been in that particular apartment, and did not have permission to be there on the night of October 13, 1997, when he broke the window and struck Dawson in the kitchen during his first attack and (later that night) returned to the residence and perpetrated a surprise physical attack upstairs upon Crum and Clayton. In direct contrast, defense counsel stated in the record that the expected testimony of Deveaux would have informed the jury that Comer and Deveaux had been in the apartment earlier that day. Deveaux's testimony, if believed, could have been exculpatory evidence and could have called into question the accuracy of the testimony and the credibility of Crum, who was a key witness of the State and whose apartment was twice entered by Comer on the night of the attacks. It could have impacted the issue of whether Comer, the father of Crum's child, had permission to be in the apartment at some time. "Relevant evidence should not be excluded from the jury unless no other remedy suffices." Cooper v. State, 336 So.2d 1133, 1136 (Fla. 1976), cert. den., 431 U.S. 925, 97 S.Ct. 2200, 53 L.Ed.2d 239 (1977). Error is harmless only where it can be said, beyond a reasonable doubt, that the error could not have affected the verdict. Czubak v. State, 570 So.2d 925, 928 (Fla. 1990). Given the record before us, we are unable to conclude that the State satisfied its DiGuilio burden to show that the failure to conduct an adequate inquiry was harmless error. Mattear v. State, 657 So.2d 46 (Fla. 4th DCA 1995) (in prosecution for sexual battery upon child, trial court's erroneous exclusion of testimony that someone other than defendant had sex with child, *776 as sanction for non-disclosure of witness, was not harmless); Baker, 522 So.2d at 492-93 (exclusion of previously undisclosed defense witness was unwarranted and constituted reversible error, where State knew that defense intended to attack credibility of victim and to rely on theory of self-defense, allowance of excluded testimony would not have altered nature of defense that victim was aggressor who had gone looking for defendant more than once on date of shooting, and prosecution had stated that information to be supplied by witness was not so damaging that it should be kept from jury).
REVERSED and REMANDED for a new trial.
ALLEN and WEBSTER, JJ., CONCUR.
NOTES
[1] Nelson v. State, 274 So.2d 256 (Fla. 4th DCA 1973).
[2] Richardson v. State, 246 So.2d 771 (Fla. 1971).