# Third District Court of Appeal
## State of Florida

Opinion filed June 2, 2021.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D19-1939
Lower Tribunal No. F19-1892
_____

**The State of Florida,**
Appellant,

vs.

**Michael Jones,**
Appellee.

An Appeal from the Circuit Court for Miami-Dade County, Tanya Brinkley, Judge.

Ashley Moody, Attorney General, and Asad Ali, Assistant Attorney General, for appellant.

Carlos J. Martinez, Public Defender, and Howard K. Blumberg, Special Assistant Public Defender, and Mary Rojas and Daniela Tenjido, Certified Legal Interns, for appellee.

Before FERNANDEZ, HENDON and GORDO, JJ.

GORDO, J.

The State of Florida appeals the trial court's dismissal of its information charging Michael Jones with armed burglary of a dwelling with assault or battery and aggravated battery with a deadly weapon. We have jurisdiction. See Fla. R. App. P. 9.140(c)(1)(A); State v. Mackey, 271 So. 3d 128, 129 (Fla. 3d DCA 2019). Following the court's sua sponte discharge of the jury without the consent of the defendant and without manifest necessity, the court dismissed the State's information against Jones based on double jeopardy. The State argues Jones implicitly consented to the mistrial and thereby waived double jeopardy. We reject that contention and affirm the order on appeal but write to address the circumstances compelling the discharge of the information in this case.

## FACTUAL AND PROCEDURAL BACKGROUND

The State filed an information charging Jones with armed burglary of a dwelling with assault or battery and aggravated battery with a deadly weapon. Jones pleaded not guilty and demanded a jury trial. A jury was selected, impaneled and sworn. The following day, immediately before trial began, the State advised the court that it had filed late discovery and earlier that morning had provided the defense with tape recordings of several 911 calls made by the defendant's daughter. The State posited the evidence would be used solely for impeachment if the defense opened the door to its

2

introduction. The defense objected and the court began to conduct a Richardson[1] hearing.

The State asserted it had obtained the discovery three weeks prior but the prosecutor herself did not see the recordings until the morning of trial when she was preparing her case. The State claimed there were two 911 calls by the defense witness, and they were very short. Defense counsel argued he was unable to apprise the court of the defense position without having heard the tapes. The court reserved ruling and called a recess for defense counsel to have an opportunity to listen to the calls, return, and have both sides present argument as to the Richardson violation.

Following a recess, defense counsel advised the court that he had not listened to the tapes and instead requested a State-charged continuance. Without hearing further argument or making any further inquiry, the court stated:

> The Court is finding in light of the Richardson violation, the Court is making a finding that it's inadvertent but it is significant and accordingly prejudicial to the defense. So, it is going to be a State-charged continuance. How much time do you need? How are we running, Loren, on this case?

---

[1] Richardson v. State, 246 So. 2d 771 (Fla. 1971).

The parties then discussed the fact that the natural speedy trial window would soon expire. Perhaps tellingly, defense counsel represented to the court that he would not be filing a notice of speedy trial expiration because "[t]hat's not the way [he] want[ed] this case resolved."

Without any further discussion with the attorneys on the record, the court called the jurors back into the courtroom and discharged them advising the jurors that they did not have to return to court for this case. The judge asked the State and defense whether they had anything to say "in closing to [their] jurors." The State merely thanked them for their service. The defense said, "Thank you for your service. I thought I was going to spend some time with you. My loss. Thank you."

The parties and the court agreed to set the case for trial in September 2019. At no point in time did anyone—the court, the defense or the State— mention double jeopardy or the declaration of a mistrial.

Then, in August 2019, defense counsel moved to dismiss the information against Jones based on double jeopardy grounds arguing that there was no manifest necessity for a mistrial, there were other alternatives to declaring a mistrial including recessing for a day or two, and that the defendant only requested a continuance and never requested or consented to the mistrial. The State opposed the motion arguing that although the

4

defendant did not request a mistrial his actions indicated implicit consent. The trial court granted Jones's motion finding that jeopardy attached when the jury was sworn and Jones could not be retried for the same offense.

## LEGAL ANALYSIS

### I. Discovery Violation – <u>Richardson</u> Hearing

A trial court's failure to conduct an adequate <u>Richardson</u> inquiry is error. <u>See</u> <u>State v. Schopp</u>, 653 So. 2d 1016, 1021 (Fla. 1995) (holding harmless error analysis should be applied where a trial court fails to conduct an adequate <u>Richardson</u> inquiry); <u>Brown v. State</u>, 165 So. 3d 726, 729 (Fla. 4th DCA 2015). A proper <u>Richardson</u> inquiry requires the lower court to address "whether the [discovery] violation was inadvertent or willful, trivial or substantial, and whether it caused prejudice or harm to the opposing party." <u>Comer v. State</u>, 730 So. 2d 769, 774 (Fla. 1st DCA 1999) (citations omitted); <u>see</u> <u>Andres v. State</u>, 254 So. 3d 283, 293 (Fla. 2018). "In assessing procedural prejudice, the trial court must determine, first, whether the discovery violation precluded the aggrieved party from adequately preparing for trial, and second, what is the proper sanction to invoke for the discovery violation." <u>Comer</u>, 730 So. 2d at 774.

"One cannot determine whether the state's transgression of the discovery rules has prejudiced the defendant (or has been harmless) without

5

giving the defendant the opportunity to speak to the question." Scipio v. State, 928 So. 2d 1138, 1146 (Fla. 2006) (quoting Schopp, 653 So. 2d at 1019). Here, the court's failure to conduct a proper Richardson inquiry denied the State and defense an opportunity to be heard or present argument regarding procedural prejudice. Based on the State's proffer and the court's conjecture, the court found the late disclosure was inadvertent, but substantial. Then, without the court or defense counsel having reviewed the evidence, the court determined the defendant was prejudiced in his trial preparation and that a discharge of the jury was warranted.

## II. Double Jeopardy

The Double Jeopardy Clause of the United States and Florida constitutions guarantees the protection of an accused against being twice put in jeopardy for the same offense. See Amend. V, U.S. Const.; Art. I, § 9, Fla. Const. "[T]he constitutional protection also embraces the defendant's 'valued right to have his trial completed by a particular tribunal.'" Arizona v. Washington, 434 U.S. 497, 503 (1978).

> The reasons why this "valued right" merits constitutional protection are worthy of repetition. Even if the first trial is not completed, a second prosecution may be grossly unfair. It increases the financial and emotional burden on the accused, prolongs the period in which he is stigmatized by an unresolved accusation of wrongdoing, and may even enhance the risk that an innocent defendant may be

6

convicted. The danger of such unfairness to the defendant exists whenever a trial is aborted before it is completed. Consequently, as a general rule, the prosecutor is entitled to one, and only one, opportunity to require an accused to stand trial.

Id. at 503–05.

"Jeopardy attaches in a criminal proceeding when the jury is impaneled and sworn." Thomason v. State, 620 So. 2d 1234, 1236 (Fla. 1993). "Once a jury is [i]mpaneled, the accused in a case has a right to be tried by that particular tribunal. This right, however, is not absolute." Merchant v. State, 201 So. 3d 146, 151 (Fla. 3d DCA 2016) (citing Thomason, 620 So. 2d at 1237).

> Unlike the situation in which the trial has ended in an acquittal or conviction, retrial is not automatically barred when a criminal proceeding is terminated without finally resolving the merits of the charges against the accused. Because of the variety of circumstances that may make it necessary to discharge a jury before a trial is concluded, and because those circumstances do not invariably create unfairness to the accused, his valued right to have the trial concluded by a particular tribunal is sometimes subordinate to the public interest in affording the prosecutor one full and fair opportunity to present his evidence to an impartial jury.

Arizona, 434 U.S. at 505. "For example, when the defendant requests declaration of a mistrial, double jeopardy usually is not a bar to reprosecution." Thomason, 620 So. 2d at 1237 (citing Oregon v. Kennedy,

7

456 U.S. 667, 672 (1982)).  Absent the defendant's motion for a mistrial or express consent, the court may only appropriately declare a mistrial on its own or a prosecution motion "if, after an assiduous inquiry into the possibility of another course of action, there is a 'manifest necessity' to do so." Merchant, 201 So. 3d at 154–55 (quoting Baez v. State, 699 So. 2d 305, 306 (Fla. 3d DCA 1997)).  The "doctrine of manifest necessity stands as a command to trial judges not to foreclose the defendant's option until a scrupulous exercise of judicial discretion leads to the conclusion that the ends of public justice would not be served by a continuation of the proceedings."  United States v. Jorn, 400 U.S. 470, 485 (1971) (citing United States v. Perez, 22 U.S. 579, 580 (1824)).

As noted by the United States Supreme Court in United States v. Dinitz, 424 U.S. 600 (1976), and reaffirmed by the Florida Supreme Court:

> The distinction between mistrials declared by the court *sua sponte* and mistrials granted at the defendant's request or with his consent is wholly consistent with the protections of the Double Jeopardy Clause.  Even when judicial or prosecutorial error prejudices a defendant's prospects of securing an acquittal, he may nonetheless desire "to go to the first jury and, perhaps, end the dispute then and there with an acquittal."

Thomason, 620 So. 2d at 1237 (quoting Dinitz, 424 U.S. at 608).  "[A]bsent circumstances thwarting the State's one full and fair opportunity to present

8

its case, the right of a defendant to completion of his or her trial by a particular tribunal should control."  Id.

### a. Trial Court's Sua Sponte Declaration of Mistrial

To every criminal law practitioner and judge, the swearing in of a jury should signal a critical point in the trial and automatically trigger the recognition that this jury of the defendant's peers will be adjudicating the State's charges against the accused barring manifest necessity or consent by the defendant.

Without a defendant's consent to a mistrial, manifest necessity can only be demonstrated where "the trial court has considered and rejected all possible alternatives."  Merchant, 201 So. 3d at 151–52 (quoting Torres v. State, 808 So. 2d 234, 235 (Fla. 2d DCA 2001)); see also Thomason, 620 So. 2d at 1238 (observing that manifest necessity "requires trial judges, *at the very least,* to evaluate and discuss available alternatives before declaring a mistrial over the objection of the defendant"); Jorn, 400 U.S. at 487.  The trial court, therefore, has a duty-bound obligation to explore all possible alternatives and hear the parties' arguments before declaring a mistrial.  A declaration of mistrial is a last resort reserved for instances of "manifestly urgent and absolute necessity."  Merchant, 201 So. 3d at 151 (quoting Thomason, 620 So. 2d at 1239).  "The trial court's failure to make an inquiry,

9

develop a proper record, and consider alternatives before declaring a mistrial forecloses a conclusion that a mistrial was even warranted, let alone one supported by manifest necessity." Id. at 155. The court's improper discharge of the jury in this case—without the defendant's consent, without any argument or showing by the State of manifest necessity and without considering alternatives—was an unwarranted declaration of a mistrial based on "assumption, inference and speculation." See id. at 154.

### b. Failure to Object Does Not Imply Waiver

"[I]f the jury is discharged without the defendant's consent, for a legally insufficient reason, and without an absolute necessity, such a discharge is equivalent to an acquittal and precludes a subsequent trial for the same offense." Spaziano v. State, 429 So. 2d 1344, 1345 (Fla. 2d DCA 1983).

The State, however, asks this Court to view the defendant's failure to object to the mistrial as an implicit waiver of the defendant's constitutional rights. We find "this position is without merit, as the law on this point is well-established: a defendant's mere failure to object to a declaration of mistrial is not tantamount to consent." Merchant, 201 So. 3d at 152; see also State v. Grayson, 90 So. 2d 710, 713 (Fla. 1956) (noting that "silence of the defendant on trial for a crime *or his failure to object* or protest against an illegal discharge of the jury" does not constitute consent to the trial court's

10

declaration of a mistrial); <u>Allen v. State</u>, 41 So. 593, 593 (1906) (holding that the defendant's "silence or failure to object or protest against the discharge of the jury did not constitute a consent or a waiver of his constitutional right" of double jeopardy); <u>Feria v. Spencer</u>, 616 So. 2d 84, 84 (Fla. 3d DCA 1993) (holding a "defendant's silence when the trial court granted the mistrial cannot be construed as consent"); <u>Spaziano</u>, 429 So. 2d at 1346 ("A defendant's silence or his failure to object or protest against an illegal discharge of the jury before a verdict, does not constitute a consent, and is not a waiver of the constitutional prohibition against a subsequent trial for the same offense if the jury has been improperly discharged.").

Moreover, Jones specifically requested a State-charged continuance of the trial.  He did not request nor consent to the declaration of a mistrial. We cannot, therefore, construe Jones's silence or his failure to object to the court's sua sponte discharge of the jury as consent to a waiver double jeopardy.

### c.  A Cautionary Tale

The State additionally argues that the defense attorney's agreement to reset the trial for a future date should be taken as an implicit waiver of double jeopardy.  Defense counsel announced he had no intention of filing a notice of expiration of speedy trial, agreed to reset the trial for a future date and

11

thanked the jury for their service, stating, "I thought I was going to spend some time with you. My loss." We do not find that having thanked the jury for their service and agreeing to a future trial date is tantamount to consent to a waiver of double jeopardy.

The State asks this Court to construe defense counsel's representation of his client's interests as a waiver of double jeopardy protection. Defense counsel's duty, however, is to represent the interests of his client within the bounds of the law—not to safeguard the State's right of prosecution.

In the criminal justice system, the court, the State and the defense each has a well-defined role. "[T]he judge is not a mere moderator, but is the governor of the trial for the purpose of assuring its proper conduct and of determining questions of law." Geders v. United States, 425 U.S. 80, 86 (1976) (quoting Quercia v. United States, 289 U.S. 466, 469 (1933)). "If truth and fairness are not to be sacrificed, the judge must exert substantial control over the proceedings." Id. at 87. The trial judge has broad discretion, within the limits of the adversary system, to "cope with the complexities and contingencies inherent in the adversary process." Id. at 86. However, the judge must remain a neutral arbiter of the matters presented by the parties. Greenlaw v. United States, 554 U.S. 237, 243 (2008). The court's function as governor of the proceedings and neutral arbiter ensures that the parties

receive a full and fair trial. Prosecutors serve as officers of the court. <u>See</u> <u>Gore v. State</u>, 719 So. 2d 1197, 1202 (Fla. 1998). The prosecutor's job is to serve justice and conduct a fair and impartial trial. <u>See</u> <u>id.</u>; <u>Stewart v. State</u>, 51 So. 2d 494, 495 (Fla. 1951). The defense's role, in turn, is to provide meaningful representation and to fully, fairly and zealously advocate the defendant's cause within the bounds of the law. <u>Wilson v. Wainwright</u>, 474 So. 2d 1162, 1165 (Fla. 1985); <u>see</u> <u>Van Poyck v. State</u>, 91 So. 3d 125, 130 (Fla. 2012).

Here, the State's duty to serve justice and the public interest entailed a duty to make a timely, appropriate objection to the illegal discharge of the jury which would bar subsequent prosecution and thwart the State's one full and fair opportunity to present evidence to an impartial jury in the prosecution of the accused. The State sat quietly as the court made <u>Richardson</u> findings without even hearing argument and it sat quietly as the impaneled jury was being discharged. We find the defendant's silence in this case could not be construed as consent to a mistrial. But the State's silence in the face of the trial court's error was the functional equivalent of consent to the discharge of the information in this case.

## CONCLUSION

Upon being apprised of a discovery violation, the trial court erred when it did not conduct a proper <u>Richardson</u> inquiry and further erred when it failed to explore alternatives to declaring a mistrial. However, there was no implicit consent to waiver of double jeopardy by the defendant resulting from the trial court's sua sponte improper declaration of a mistrial. Because the trial court's declaration of a mistrial was made in the absence of manifest necessity, its subsequent dismissal of the State's information based on double jeopardy was proper.

Affirmed.