937 So.2d 193 (2006)
Tyrone WOODLY, Appellant,
v.
STATE of Florida, Appellee.
No. 4D05-1863.
District Court of Appeal of Florida, Fourth District.
August 23, 2006.
Rehearing Denied September 29, 2006.
*194 Kayo E. Morgan of Kayo E. Morgan, P.A., Fort Lauderdale, for appellant.
Charles J. Crist, Jr., Attorney General, Tallahassee, and Laura Fisher Zibura, Assistant Attorney General, West Palm Beach, for appellee.
WARNER, J.
Appellant, Tyrone Woodly, appeals the trial court's denial of his post-sentencing motion to withdraw his plea without holding an evidentiary hearing on the issue. Because the allegations of his motion either were legally insufficient or were conclusively refuted by the record, we affirm.
The state charged Woodly with robbery with a firearm, armed kidnapping, and attempted murder. The probable cause affidavit stated that the victim was shot and robbed:
[Woodly] entered the business with two other [] males. All three of the suspects produced handguns and demanded money. The victim, in fear for his life, gave the suspects $1,000. The victim was tied up using duct tape and was held against his will at gunpoint. The suspects began to demand more money from the victim.
[The victim] was held against his will at gunpoint. The suspects began to demand more money from the victim. In an attempt to get more money from the victim the robbers took off the shoe of [the victim] and cut his toe. [The victim] *195 in fear for his life agreed to give more money to the robbers. [He] then attempted to escape. While attempting to escape, [the] victim was shot twice in an attempt to kill him. [The victim] was shown a six person photographic lineup and he immediately and without hesitation picked out Woodly [as] the person who robbed him.
The information alleged that one of the other suspects actually discharged the firearm resulting in the victim's injuries. However, at the plea hearing the prosecutor also noted that Woodly's fingerprints were on the duct tape used on the victim.
Nearly a year after the information was filed, the case came on for trial. Before voir dire commenced, Woodly complained about his lawyer. The court asked if he wanted to discharge his lawyer, to which Woodly said "if that's possible, Judge." The court then conducted a Nelson inquiry. Woodly complained that his lawyer did not visit him and added, "I'm being charged with attempted murder. I didn't [shoot] this man.... I'm charged with kidnapping, nothing really I did."
Woodly's lawyer generally explained that the case had been delayed by witness problems and bad address problems, but elaborated that the deposition of the main witness in the case had not been completed until the night before. He had already gone over the deposition extensively with Woodly.
The court found that Woodly's lawyer was providing effective assistance of counsel and refused to replace counsel. The judge gave Woodly three choices: to hire another private attorney, to keep his present counsel, or to represent himself. However, the court refused to continue the trial because the request was being made on the day of trial, and Woodly had never raised his dissatisfaction with counsel even though his case had been before the court practically once a month during the past year. Woodly then chose to continue with his present counsel.
Counsel then told the court that plea negotiations were still ongoing. The state had offered Woodly a plea deal of fourteen (14) years in prison with a ten (10) year minimum mandatory sentence. Counsel told the court that, even assuming Woodly were found guilty of only "lesser" offenses on two of the charges, Woodly's sentence would be more than the plea offer.
The court asked what the potential penalties were, and the prosecutor informed that Woodly was "looking at life because of the robbery firearm as a principal." However, this was not a mandatory life sentence. The court then confirmed that Woodly's "potential penalty would be up to life discretionary with a ten year minimum mandatory" under the 10-20-Life law.
Defense counsel tried to get Woodly to accept the state's offer, and at first Woodly agreed to accept it. However, when he continued to express dissatisfaction with his lawyer, the court told him that he had the option of going to trial, as a jury venire was waiting outside. Woodly then decided to go to trial.
However, during the lunch break for the jury, Woodly's co-defendant changed his plea, and Woodly also changed his mind about going to trial. The court then conducted a plea colloquy. When asked whether he was satisfied with his lawyer's services, he said, "the truth, no." When pressed, he complained that his lawyer had not obtained a favorable plea deal, given that he had never been convicted of any other crime. The prosecutor responded that there was nothing that defense counsel could have said to convince him to give Woodly a better offer.
After further discussions, the court again asked Woodly whether he wanted to *196 accept the offer or continue with jury selection. Once again, Woodly said he would take the plea. The court asked, "Anyone forcing you, coercing you or threatening you into taking this plea?" Woodly responded, "No." The court asked whether Woodly was entering into the plea voluntarily, to which he replied "yes."
The court then asked, "Mr. Woodly, has anyone, including your attorney, told you anything different than what I've told you here in open court?" Woodly again replied "no." The court explained that Woodly was facing up to life imprisonment with a 10-year minimum mandatory on each count in the information pursuant to the 10-20-Life provision of the Florida Statutes. Woodly indicated that he understood this. The court specifically asked the defendant:
Has anyone, including [defense counsel]... twisted your arm or unduly influenced you or pushed you emotionally to such extent that you're changing this plea but that's not what you want to do? Has anyone done that?
[DEFENDANT WOODLY]: No.
The court asked whether Woodly wanted to accept the state's offer, and he said "yes." Defense counsel stipulated to the factual basis of the plea, as contained in the probable cause affidavit. The court sentenced Woodly pursuant to the negotiated plea  fourteen (14) years, with a ten-year minimum mandatory sentence.
Five days later, Woodly filed a motion to withdraw his plea through new counsel. As grounds for withdrawal, Woodly cited (1) the court's refusal to grant a continuance for him to obtain a new attorney, which he regarded as coercion; (2) counsel's misadvice to Woodly that his case was indefensible and that he would be convicted and sentenced to life in prison; however, Woodly claimed that he was aware of several witnesses who would undermine the testimony of the state's key witnesses; and (3) counsel's failure to inform him of the "independent act doctrine" or the "mere presence doctrine," which he claimed were lawful defenses to the charges. Woodly alleged that, had he known of these defenses, he would not have entered his plea. The state responded asking the trial court to deny Woodly's motion without prejudice to his filing for collateral relief under rule 3.850. The court did just that, attaching the state's response as well as a transcript of the change of plea hearing. This appeal followed.
We conclude that the court did not err in summarily denying Woodly's post-sentence motion to withdraw his plea pursuant to Florida Rule of Criminal Procedure 3.170(l). The standard of review of a trial court's denial of a motion to withdraw plea is abuse of discretion. Boule v. State, 884 So.2d 1023, 1024 (Fla. 2d DCA 2004). Pursuant to Florida Rule of Appellate Procedure 9.140(b)(2)(A)(ii)(a)-(e) and Florida Rule of Criminal Procedure 3.170(l), a defendant may withdraw a plea within thirty (30) days after the rendition of the sentence, but only upon the following grounds: (a) the lower tribunal's lack of subject matter jurisdiction; (b) a violation of the plea agreement, if preserved by a motion to withdraw plea; (c) an involuntary plea, if preserved by a motion to withdraw plea; (d) a sentencing error, if preserved; or (e) as otherwise provided by law.
Where a defendant files a facially sufficient motion to withdraw his plea, he is entitled to an evidentiary hearing on the issue unless the record conclusively refutes his allegations. See Snodgrass v. State, 837 So.2d 507 (Fla. 4th DCA 2003); Simeton v. State, 734 So.2d 446 (Fla. 4th DCA 1999).
*197 In this case, we deal only with the claim that appellant's plea was involuntary. We conclude that the record refutes each of the reasons Woodly alleged to support the withdrawal of his plea as being involuntary. First, as to the denial of a continuance so that Woodly might obtain private counsel, the court was not required on the day of trial to accede to such a request, particularly where Woodly clearly had made no arrangements for private counsel.
In fact, under the circumstances of this case, Woodly had simply asked to discharge appointed counsel for ineffectiveness. Our supreme court has said, "if a trial court decides that court-appointed counsel is providing adequate representation, the court does not violate an indigent defendant's Sixth Amendment rights if it requires him to keep the original court-appointed lawyer or represent himself. Foster v. State, 704 So.2d 169, 172 (Fla. 4th DCA 1997)." Weaver v. State, 894 So.2d 178, 188 (Fla.2004). In Foster we noted:
Although a criminal defendant has a Sixth Amendment right to select his own private attorney, the right "is circumscribed in several important respects." See Wheat, 486 U.S. [153] at 159, 108 S.Ct. [1692] at 1697 [100 L.Ed.2d 140 (1988)]. While the Sixth Amendment affords criminal defendants a "presumption in favor of counsel of choice," id., "where `considerations of judicial administration' supervene, the presumption in favor of counsel of choice is rebutted and the right must give way," United States v. Voigt, 89 F.3d 1050, 1074 (3d Cir.), cert. denied, 519 U.S. 1047, 117 S.Ct. 623, 136 L.Ed.2d 546 (1996)....
[I]n Bowman v. United States, 409 F.2d 225 (5th Cir.1969), the appellate court affirmed the trial court's refusal to substitute counsel and grant a continuance to allow the defendant to procure other counsel where these requests were made on the morning of trial. The appellate court noted that the appellant had failed to raise any specific deficiency in counsel's performance, that appointed counsel was ready for trial, and that the defendant had given no reason for waiting until the morning of trial before bringing his dissatisfaction to the trial court's attention. Id. at 226. Under these circumstances, the court was apparently skeptical of the defendant's motivation in seeking the continuance and substitution:
We and other courts of appeals have repeatedly made clear that the right to counsel "cannot be ... manipulated so as to obstruct the orderly procedure in the courts or to interfere with the fair administration of justice."... Judges must be vigilant that requests for appointment of a new attorney on the eve of trial should not become a vehicle for achieving delay.
704 So.2d at 173 (footnote omitted).
Similarly, in this case, Woodly waited until the morning of trial to raise his dissatisfaction with his court-appointed attorney when the case had been pending for over a year, a point not lost on the trial court. We think the record conclusively refutes Woodly's allegations with respect to his complaint of going to trial with appointed counsel.
In his second ground to withdraw his plea, Woodly maintains that he was assured by appointed counsel that if he did not take the negotiated plea, the trial judge would impose a life sentence after trial if he were convicted. The allegation that counsel misadvised appellant that he would receive a life sentence if convicted is cognizable under rule 3.170(l). Boule v. State, 884 So.2d 1023, 1024 (Fla. 2d DCA 2004). However, here the record conclusively refutes the allegations. In Woodly's presence, the prosecutor stated that the *198 potential penalty was up to life imprisonment on each count. The court confirmed that the life sentence was discretionary and not mandatory. Further, through its questioning, the trial court confirmed that no one, including Woodly's attorney, had told Woodly anything different than what the court was informing him about his sentence. The trial court informed Woodly that if he proceeded to trial he was facing up to life imprisonment with a ten-year minimum mandatory on each count in the information pursuant to the 10-20-Life provision of the Florida Statutes. Based upon the transcript, Woodly was well aware that he was not facing a mandatory life sentence on the charges to which he pled guilty.
This case therefore bears similarity to Jones v. State, 680 So.2d 585 (Fla. 4th DCA 1996). There, the defendant filed a post-conviction motion under rule 3.850, alleging that his lawyer misstated the law by advising him, prior to entering his plea, that if he were found guilty as an habitual offender "you're never going to get out of prison because the judge is obligated to sentence you to life." Id. at 586. During the plea conference, the trial court told the defendant: "You also understand you are habitually qualified. That means if the Court were to declare you to be a habitual offender, that you could be sentenced to life as a habitual offender." Id. at 587 (emphasis added). This court held that the defendant's claim of an involuntary plea was refuted by the transcript, which demonstrated that the trial court correctly advised him about the potential habitual offender sentence. In Jones, just as in the present case, the judge did not tell the defendant that if convicted after trial, then imposition of a life sentence was mandatory. The Jones court reasoned:
Here, the judge correctly advised defendant as to the possibility of life imprisonment upon conviction as an habitual felony offender. Defendant indicated that he understood the nature of the potential sentence. If he had been told something different by his lawyer, defendant was obligated to speak up at the plea conference and ask the court about the discrepancy. He could not stand mute, accept the benefits of the plea, and then collaterally attack its voluntariness on the basis of something that should have been cleared up at the time of the plea.
Id. See also Ragoobar v. State, 893 So.2d 647 (Fla. 4th DCA 2005).
Additionally, Woodly sought to withdraw his plea because his attorney failed to inform him of available defenses to the charges  namely, the "independent act" doctrine and the "mere presence" doctrine. However, based upon the record and the stipulated factual basis of the plea, it is clear that the "independent act" and "mere presence" doctrines were not "available" defenses, and Woodly has not alleged any other facts to show their availability.
In Snodgrass, we said:
Where a motion to withdraw a plea occurs after sentencing, the appellant has the burden of proving that "a manifest injustice has occurred." LeDuc v. State, 415 So.2d 721, 722 (Fla.1982); State v. Wiita, 744 So.2d 1232, 1234 (Fla. 4th DCA 1999). This is a more stringent standard than a motion to withdraw a plea filed before sentencing; the burden falls on the defendant to prove that withdrawal is necessary to correct the manifest injustice. See Scott v. State, 629 So.2d 888, 890 (Fla. 4th DCA 1993).
837 So.2d at 508 (emphasis in original). Such proof must be more than mere general allegations. Cf. Robinson v. State, 761 So.2d 269 (Fla.1999) (requiring defendant to offer proof of involuntariness in connection with a rule 3.170(f) motion). *199 Without some circumstance which would show that the defense of "independent act" or "mere presence" was available at trial, the trial court did not abuse its discretion in denying the motion to withdraw the plea on this ground.
Finally, Woodly's complaint that he knew of witnesses who would contradict the state's witnesses also fails as being legally insufficient to show that his plea was involuntary. Absent coercion, mistake or misadvice, defendants may not "renege on plea agreements on the basis that they have miscalculated their risks and benefits or have belatedly discovered a new defense." United States v. Muriel, 111 F.3d 975, 981 (1st Cir.1997). In this case, there was no coercion, misadvice, or misapprehension regarding the investigation defense counsel had done. If Woodly knew of witnesses who would support his claims, then he could have gone to trial. He cannot show that his plea was involuntary based upon matters known to him at the time he decided to plead guilty, even if counsel may have been ineffective in failing to obtain their statements.
Because the record before the trial court refuted each of Woodly's grounds for determining that his plea was involuntary, we affirm. We do so, however, without prejudice to Woodly filing a motion for postconviction relief on any grounds not disposed of by this opinion.
Affirmed.
GROSS and HAZOURI, JJ., concur.