LAGOA, J.
The defendant, Ramon Puentes (“Puentes”), appeals from his sentence and the denial of his post-sentencing motion to withdraw his plea. Because we find no merit to any of the issues raised on appeal, we affirm.
I. FACTUAL HISTORY
Puentes was charged in case number F04-22159E by amended information filed on March 1, 2006, with racketeering (count 1), conspiracy to commit l'acketeering (count 2), organized scheme to defraud (count 11), third degree grand theft (count 12), and money laundering (count 13). He was charged in case number F04-22169G by amended information filed on August 5, 2005, with racketeering (count 1), conspiracy to commit racketeering (count 2), organized scheme to defraud (count 12), and three counts of third degree grand theft (counts 13, 14 and 15). Puentes was also charged in case number F05-11782 by information filed on May 3, 2005, with burglary of an unoccupied structure (count 1) and first degree grand theft (count 2).
On January 4, 2008, Puentes and the State entered into separate plea agreements in which Puentes entered irrevocable guilty pleas to one count of organized scheme to defraud (count 11 in case number F04-22159E), one count of organized scheme to defraud (count 12 in case number F04-22169G), and one count of burgla *915 ry of an unoccupied structure (count 1 in case number F05-11782).
All three plea agreements provided in pertinent part, as follows:
2. The Court shall accept Defendant’s guilty plea, shall enter a finding and adjudication of guilt, but shall defer sentence until the Defendant has completed all conditions as set forth below. The Defendant’s guilty plea is irrevocable.
[[Image here]]
6. If the State determines that the Defendant has satisfied all of the special conditions contained in this Agreement then the parties agree that the Defendant shall be sentenced to a term of imprisonment of eighteen (18) months followed by a term of probation of three (3) years. This sentence shall run concurrent with the sentences imposed [in all three cases]....
[[Image here]]
7. Additionally, the State agrees that, based upon the extent and value of the Defendant’s cooperation, the Office of the State Attorney in its sole discretion, may provide the Defendant with additional relief at the time of sentencing which could act as mitigation towards his ultimate sentence.
8. If the Defendant violates any of the terms of this Agreement ... the parties agree that the Defendant may be sentenced to the statutory maximum of the offense charged which is stipulated by the parties to be [terms of incarceration of: 5 years in case.F04-22159E 30 years in case F04-22169G and 5 years in case F05-11782],
[[Image here]]
10. The Defendant shall refrain from the commission of any crime during the pendency of this case and the Defendant’s cooperation. Any violation of this paragraph on the part of the Defendant shall constitute a breach of this plea agreement, and shall render this agreement voidable at the discretion of the State. In the event that the State elects to void this agreement as a result of the Defendant committing a crime, the parties agree that the sanctions as set out in paragraph eight (8) above shall be imposed.
(Emphasis added).
Therefore, under the express terms of the plea agreements, Puentes’s full compliance with all conditions would result in Puentes being sentenced to concurrent terms of eighteen months in prison followed by three years of probation, and payment of restitution. However, if Puentes violated any of the terms of the agreements, he would be sentenced to the statutory maximum sentences of the three offenses to which he plead guilty. Indeed, during his plea colloquy, both Puentes and his counsel specifically acknowledged that the parties had agreed that if Puentes violated the agreements, the statutory maximum sentences would be imposed consecutively for a total term of forty years in prison. On that same day, the trial court ratified the terms of the plea agreements, Puentes entered his irrevocable guilty pleas, and the trial court entered judgments accordingly. The state nolle prossed the remaining counts. Pursuant to the plea agreements, the trial court deferred sentencing until Puentes completed all the conditions of his plea agreements.
It is undisputed that after entering into his plea agreements and entering his guilty pleas, and before he was sentenced, Puentes committed federal criminal offenses, and pleaded guilty to federal criminal charges in January 2009.
*916 After his admitted noncompliance with the term of the plea agreements which provided that he “refrain from the commission of any crime during the pendency of this case,” Puentes gave a sworn statement and appeared for two depositions, but the State did not call him to testify at the trial of his co-defendant, Bert Velunza. Although the plea agreements provided that Puentes would be sentenced to the statutory maximum if he violated the terms of his plea agreements, the State ultimately recommended a sentence of fifteen years in prison, despite Puentes’s noncompliance with the agreements.
Prior to sentencing, Puentes filed an amended memorandum of law asserting that his sentence could not be increased above the agreed upon eighteen months because: (a) the State had not filed a timely motion to vacate the plea agreements pursuant to Florida Rule of Criminal Procedure 3.170(g)(2)(A); (b) the State’s actions constituted an implied waiver of his breach of the plea agreements as the State elected to allow him to continue performing under the terms of the plea agreement; (c) the State’s actions violated the agreements’ implied covenant of good faith and fair dealing; and (d) the State’s conduct violated his right to substantive and procedural due process.
The trial court subsequently conducted sentencing hearings on March 26, 2009, April 30, 2009, and May 12, 2009.[1] Among those who testified at the hearings were Assistant State Attorney Richard Scruggs and Puentes’s attorney, Oscar Rodriguez, Sr.
At a hearing on May 26, 2009, the trial judge announced its findings and sentence. In its subsequent written order, the trial court found that Puentes had breached his plea agreements by committing the acts set out in the federal indictment, and that the sixty day time frame in Rule 3.170(g)(2)(A) did not apply because Puentes had not yet been sentenced at the time of his breach. Moreover, even if Rule 3.170(g)(2)(A) were to apply, the trial court found “by clear and convincing evidence which is both substantial and competent, that the parties agreed to waive any time period. And that was done at the request of the defendant’s counsel.” The trial court also found that “not only is the State acting in good faith, but they are giving the defendant exceptionally reasonable treatment for his small contribution of having pled guilty.” The trial court accepted the State’s recommendation of a sentence to fifteen years in prison, and sentenced Puentes to a term of five years in prison in case number F04-22159E, a term of fifteen years in prison in case number F04-22169G to run concurrently with the sentence in case number F04-22159E, and a term of five years in prison in case number F05-11782 to run consecutive to F04-22159E but concurrent with F04-22169G.
On June 24, 2009, Puentes filed a motion to withdraw his plea arguing that he was never told that the State was seeking to increase his sentence above the eighteen months and that at no point did the State file a motion to void the agreements. The trial court denied the motion on that same day without an evidentiary hearing. The trial court found that Puentes’s argument was duplicative of the issues addressed at the prior hearings and that Puentes had failed to establish the manifest injustice necessary to vacate a plea agreements after sentencing. The trial court also noted *917 that Puentes had been given the opportunity to testify regarding these issues at a previous hearing. This appeal ensued.
II. ANALYSIS
Below we address each of the five issues raised by Puentes on appeal.
A. Rule 3.170(g)
First, Puentes argues that the State could only increase his sentence from the eighteen month agreement by way of a motion, pursuant to Florida Rule of Criminal Procedure 3.170(g)(2)(A), to vacate the plea agreements within sixty days of Puentes’s noncompliance. Because the State did not file such a motion, Puentes argues that the “State is prohibited to void the plea agreement.” The trial court ruled that Rule 3.170(g) did not apply to the instant case because Puentes had not yet been sentenced. We agree and find that the trial court did not err in reaching that conclusion.
Rule 3.170(g) provides:
(g) Vacation of Plea and Sentence Due to Defendant’s Noncompliance.
(1) Whenever a plea agreement requires the defendant to comply with some specific terms, those terms shall be expressly made a part of the plea entered into in open court.
(2) Unless otherwise stated at the time the plea is entered:
(A) The state may move to vacate a plea and sentence within 60 days of the defendant’s noncompliance with the specific terms of a plea agreement.
(B) When a motion is filed pursuant to subdivision (g)(2)(A) of this rule, the court shall hold an evidentiary hearing on the issue unless the defendant admits noncompliance with the specific terms of the plea agreement.
(C) No plea or sentence shall be vacated unless the court finds that there has been substantial noncompliance with the express plea agreement.
(D) When a plea and sentence is vacated pursuant to this rule, the cause shall be set for trial within 90 days of the order vacating the plea and sentence.
A reading of the rule makes clear that it applies to a factual circumstance where the defendant has entered a plea and also been sentenced. This section of the rule is entitled “Vacation of Plea and Sentence” and subsection (2)(A) further provides that the State may move to vacate a “plea and sentence.” Indeed, section (g) was added to Rule 3.170 in response to McCoy v. State, 599 So.2d 645 (Fla.1992), a case in which the defendant already had accepted a plea and been sentenced when the State filed a motion to resentence the defendant or allow her to withdraw her plea because of her failure to comply with an agreement to testify truthfully against her “supplier.” Id. at 648. Pending adoption of a permanent rule, the Supreme Court set forth the procedure for the State to file a motion to vacate a plea and sentence. Id. at 649.
Additionally, Rule 3.170 does not apply because the State was seeking to enforce the terms of the plea agreements, not vacate them. Specifically, and contrary to Puentes’s assertion that the State was seeking to vacate or void the plea agreements by recommending a sentence above eighteen months, the State’s position below was enforcement of the express provision of the plea agreements that provided that Puentes may be sentenced to the statutory maximum if he violated any term of the agreements. Additionally, we note that Puentes did not seek to vacate the plea agreements. Indeed, as Puentes’s counsel admitted at oral argument, Puentes did not want the plea agreements vacated, but instead wanted to have the benefit of the *918 bargain, i.e., an eighteen-month sentence, despite his admitted violation of the terms of the plea agreements.
Moreover, in Metellus v. State, 900 So.2d 491 (Fla.2005), the Supreme Court ruled that Rule 3.170(g)(2)(A)’s sixty-day time frame is not jurisdictional. Id. at 495. If the sixty days is not jurisdictional, then waiver applies. At the May 12, hearing, Puentes’s attorney, Rodriguez, testified that he requested that the State “keep an open mind” about Puentes’s sentence after the admitted noncompliance with the plea agreements. Indeed, Rodriguez specifically testified that his goal was to persuade Assistant State Attorney Scruggs to allow Puentes to “go through” with the agreement and to convince the State to continue to use Puentes in the hopes of avoiding a sentence above the eighteen months. Moreover, Rodriguez testified that Scruggs advised him that it was “highly unlikely” that the sentence would be eighteen months. Given this testimony, it is clear that the State did not lull Puentes into believing the agreement for an eighteen-month sentence was still in place, and that the State’s failure to file any motion, even if one were required, was at Puentes’s request.
B. Waiver
Puentes’s second argument is that the State’s actions of allowing Puentes to give a sworn statement and to appear for two depositions after the admitted noncompliance constituted a waiver by the State of its election to void the plea agreements and seek an enhanced sentence. However, the record is clear that, after Puentes’s noncompliance, the State communicated to Rodriguez that it could no longer recommend the eighteen-month sentence, and that it was at Rodriguez’s insistence that the State continued to allow Puentes to cooperate. Rodriguez testified that he wanted Puentes to continue to cooperate in order to hopefully reduce what was now an increased sentence back down to the eighteen months. Accordingly, the record clearly establishes that the State did not waive its right under the plea agreements to recommend a sentence greater than eighteen months, nor did Puentes ever believe that the State had relinquished that right,[2] as that was the impetus for him to continue cooperating.
*919 Finally, the State correctly argues that Puentes still had to perform under the plea agreements because pursuant to the plea agreements, other charges against Puentes were dismissed, and he originally faced over 200 years in prison. The trial court also found in the sentencing order that because Puentes’s plea of guilty was irrevocable, Puentes no longer had a Fifth Amendment privilege not to testify.
C. Implied Covenant of Good Faith and Fair Dealing
Thirdly, Puentes argues that the State violated the agreements’ implied covenant of good faith and fair dealing based on its failure to tell him that the State intended to void the agreements and seek an increased sentence when it learned of his violation, while continuing to use his cooperation. Puentes contends that he was thereby reasonably led to believe that the State would fulfill its promise to recommend a sentence of eighteen months or less. As we already have discussed, Rodriguez’s and Scruggs’s testimony at the hearing establishes that it is clear that the State did not lull Puentes into believing the plea agreement for an eighteen-month sentence was still in place. Therefore, the trial court did not err in finding that the State acted in good faith and did not mislead Puentes.
Puentes also argues that the record does not support the findings in paragraphs 14 and 15 of the sentencing order and that the findings conflict with Scruggs’s testimony. This argument is without merit.
The record does not indicate that Scruggs testified that he definitely would seek a significant sentence or that the only option was a significant or maximum sentence.[3] However, a review of Scruggs’s testimony as well as Rodriguez’s testimony shows that Rodriguez knew, and discussed with Puentes, that Puentes was facing the possibility of a higher sentence based on his violation, but, as requested by Rodriguez, that Scruggs would keep an open mind if Puentes continued to cooperate. Scruggs testified that he told Rodriguez that Puentes violated the plea agreements, that he would be seeking to violate the plea agreements and bring it to the attention of the court, that the violation took away the eighteen-month recommendation, that Rodriguez asked him to keep an open mind about the eighteen months, and that he told Rodriguez that it would be very difficult, but he would try to keep an open mind. As to his discussions with Puentes, Rodriguez testified that he spoke with Puentes concerning the maximum penalty he was facing under the plea agreements, that Puentes knew the agreement was in jeopardy, and that he talked with Puentes about “enough time” (but not forty years). He also testified that he convinced Scruggs to continue to use Puentes so that he could get back to the eighteen months, that Scruggs told him that the eighteen-month sentence was highly unlikely, and that Puentes knew that the possibility of an increased sentence existed. The impetus for Rodriguez to tell Scruggs to keep an open mind was to try and keep the increased sentence for the violation as close *920 as possible to the eighteen months. As stated in his deposition, Puentes knew that he was facing thirty years if he violated the plea agreement and that the agreement provided for such sentence. He merely did not think it was a significant case. Therefore, the record supports the trial court’s findings and it is clear that Puentes knew that he was facing a higher sentence for violating the plea agreements.
D. Violation of Procedural and Substantive Due Process Rights
Fourth, Puentes argues that the State’s conduct violated his rights to procedural and substantive due process. These arguments are also without merit.
As to the alleged procedural due process violation, Puentes contends that the trial court violated its May 4 ruling on the statement of particulars that limited the plea violation to the federal offense. In support of this argument Puentes relies on a portion of the sentencing order, which states that the State could not have used Puentes’s testimony in good faith after it debriefed Velunza. Puentes argues that if he had known that the trial court intended to rely on this testimony, he could have filed a new motion for statement of particulars and called rebuttal witnesses to contest the assertion that Puentes’s statements were not credible.
Puentes correctly contends that the State limited its basis for the plea violation to the federal offense. However, in his amended memorandum of law, filed in anticipation of matters that may be raised at sentencing, Puentes argued that the State did not act in good faith when it continued to use Puentes’s cooperation for its benefit after the commission of the federal offense which led him to reasonably expect that the State would recommend a sentence of eighteen months or less. At the April 30 hearing, Scruggs testified as to his reasons for not using Puentes as a witness at the Velunza trial. Puentes raised a relevancy objection to this testimony. The trial court overruled the objection, stating that this evidence “goes to the sequence of events, which is relevant to Mr. Scruggs’s action and the likelihood or not of what you’re saying, whether or not [Scruggs] led your client down the primrose path and why I should believe that or not....” As stated in the ordei', the trial court merely mentioned this evidence in concluding that the State acted in good faith and in considering the extent of Puentes’s cooperation.[4] Therefore, the trial court did not violate its ruling on the statement of particulars because this evidence did not go to the State’s argument that Puentes violated the plea agreement.
In addition, in his amended memorandum of law, Puentes raised the good faith violation/cooperation issue concerning his testimony in the Velunza case.[5] Therefore, he should have been prepared to *921 present evidence as to his failure to testify in the Velunza case in response to the State’s assessment of his cooperation. Furthermore, the objected-to testimony concerning Puentes’s participation in the Velunza case occurred at the April 30 hearing. That hearing was continued until May 12. At the end of April 30 hearing, Puentes’s defense counsel asked the trial court about Scruggs’s statement that he could not vouch for Puentes’s credibility, precluding him from presenting Puentes as a witness at Velunza’s trial. At the May 4 hearing on the statement of particulars, defense counsel did not further pursue that inquiry or request an opportunity to present any additional witnesses. At the sentencing hearing, which continued on May 12, defense counsel questioned Scruggs concerning the Velunza case. At that time, he had the opportunity to address this issue. Therefore, Puentes was not precluded from contesting Scruggs’s testimony concerning Puentes’s failure to testify in the Velunza case.
As to the alleged substantive due process violation, Puentes argues that the State acted in bad faith by waiting until he cooperated before noticing counsel of the State’s intentions to seek an increased sentence. We reject this argument based on our previous conclusion that “that the record is clear that, after Puentes’s noncompliance, the State communicated to Rodriguez that it could no longer recommend the eighteen month-sentence, and that it was at Rodriguez’s insistence that the State continued to allow Puentes to cooperate. Rodriguez testified that he wanted Puentes to continue to cooperate in order to hopefully reduce what was now an increased sentence back down to the eighteen months ... [and] Puentes [did not] ever believe that the State had relinquished that right, as that was the impetus for him to continue cooperating.” See supra p. 918. (footnote omitted).
E. Motion to Withdraw Plea
Puentes’s final argument is that the trial court erred in denying his motion to withdraw his plea without holding an evidentiary hearing. When a motion to withdraw a plea is filed after sentencing, the defendant has the burden of demonstrating “a manifest injustice requiring correction.” State v. Partlow, 840 So.2d 1040, 1042 (Fla.2003). Additionally, a defendant is entitled to an evidentiary hearing on the motion to withdraw the plea “unless the record conclusively refutes his allegations.” Woodly v. State, 937 So.2d 193, 196 (Fla. 4th DCA 2006). The standard of review of a trial court’s denial of motion to withdraw plea is abuse of discretion. Id.
In his motion to withdraw plea, Puentes argued that the State violated the plea agreements by failing to recommend a sentence of eighteen months and that at no point did the State tell him that it was “seeking the void his plea agreement and seek an increased sentence until after his cooperation was complete.” The trial court denied the motion and the request for an evidentiary hearing, finding that the grounds raised by Puentes were duplica-tive to those raised at the numerous sentencing hearings and that “I don’t find, that on the face of the pleadings, the manifest injustice necessary has been met.” In reaching her conclusion, the trial judge also stated that she recalled “very specifically and very clearly giving Mr. Puentes the opportunity to testify at that time.”
The trial court did not abuse its discretion in denying the motion to withdraw plea without conducting an evidentia-ry hearing. The record conclusively refuted Puentes’s allegation that the State did not tell him that it was seeking an increased sentence. As explained above, *922 there was testimony, previously given before the trial court, that Puentes had been told by Rodriguez that the State would no longer recommend the eighteen-month sentence. Moreover, the trial court specifically found that the State had acted in good faith, and “at all times indicated that 18 months was not going to apply.” Indeed, at the hearing on May 26, 2009, at which the trial judge stated her findings and sentence, the trial judge specifically asked Puentes whether he wished “to allo-cute ... or put on any further evidence.” Puentes’s counsel responded that he did not.
The very issue Puentes asserted in his motion to withdraw the plea was addressed at hearings held on March 26, 2009, April 30, 2009, and May 12, 2009, and was determined at the sentencing hearing of May 26, at which Puentes was given another opportunity testify, but refused. Given this, it cannot be said that the trial court abused its discretion in determining that Puentes was not entitled to another evidentiary hearing on the issue of whether the state breached the plea agreements.
For the above reasons, we affirm Puentes’s sentence and the denial of his motion to withdraw his plea.
Affirmed.

. After the April 30 hearing, Puentes filed a Motion for Statement of Particulars, seeking, inter alia, to know the specific alleged violation of the plea agreements upon which the State relied. At the May 4 hearing on this motion, the prosecutor stated that Puentes did not comply with the plea agreements based on the federal indictment.

. Rodriguez testified at the hearing held on March 26 that he told Puentes that because of his violations and breach of the agreements he was facing a higher sentence. Indeed, Puentes testified at his deposition that he knew a violation would expose him to a higher sentence, he just did not believe that his crimes warranted a thirty-year sentence:
Q. Without going over the same ground again, just to summarize, I had asked you whether or not you had a substantial or significant criminal history, and you had difficulty saying yes to that, so we went through your criminal history, spent a lot of time doing that.
A. That is correct.
Q. We found out there are at least five or six arrests and cases that you've had?
A. Yes.
Q. You still maintain that you don't have a significant or substantial criminal history?
A. Yes, I do not.
Q. You don’t consider it—
A. I don’t consider it.
Q. You don't consider any of those cases to be significant, substantial?
A. No.
Q. Do you consider this case in which you are testifying to be significant or substantial?
A. No.
Q. You heard Mr. Scruggs say that you’ve breached, in his view, your plea agreement?
A. Yes.
Q. And we marked it and you identified the three plea agreements as Defendants’ Velunza 1, 2 and 3 for these depositions. Do you remember that?
A. Yes.
Q. And in the plea agreements, if you breach the agreement, you're facing thirty years in State prison?
*919 A. Yes.
Q. You remember that?
A. Yes.
Q. You saw that in the agreement?
A. Yes.
Q. You were aware of that at the time that you signed it?
A. Yes.
Q. And you still feel that this is not a significant case, a case in which you can get up to thirty years in prison?
A. No.

. Scruggs testified that whether or not Puentes faced an enhanced sentence was at the exercise of his discretion at some later date because he was keeping an open mind.

. The order, in pertinent part, states: "This Court finds not only is the State acting in good faith, but they are giving the defendant exceptionally reasonable treatment for his small contribution of having pled guilty. The fact that the defendant "stood ready” after his violation, to be deposed and testify, is of little moment since his irrevocable plea vitiated any claim he might have had to invoke his 5th Amendment privilege; he had no 5th Amendment privilege remaining in this matter. Further, the State could not in good faith have used his testimony after having debriefed co-defendant Velunza."

. In the amended memorandum, Puentes asserted that the “State allowed Mr. Puentes to remain on their witness list and arranged for him to appear for a defense deposition. Subsequent to the deposition, the State then intended to use him as a witness at trial until they resolved the case against Bert Velunza. These acts by the State operate as a conclusive election to continue performing under the contract.”