DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT
*July Term 2014*

**LISTON T. GUMBS, JR.,**
Appellant,

v.

**STATE OF FLORIDA,**
Appellee.

No. 4D12-518

[August 13, 2014]

Appeal from the Circuit Court for the Seventeenth Judicial Circuit, Broward County; Michael A. Usan, Judge; L.T. Case No. 09-15310 CF10A.

Carey Haughwout, Public Defender, and Ian Seldin, Assistant Public Defender, West Palm Beach, and Liston T. Gumbs, Jr., Okeechobee, pro se.

Pamela Jo Bondi, Attorney General, Tallahassee, George Francis and Monique Rolla, Assistant Attorneys General, West Palm Beach, for appellee.

GERBER, J.

The defendant appeals the circuit court's order summarily denying his motion to withdraw his plea to attempted first-degree murder with a firearm. According to the defendant: (1) his motion to withdraw plea was facially sufficient because it alleged that defense counsel misadvised him that if he proceeded to trial and was found guilty, the court was required to sentence him to life in prison; (2) he is entitled to an evidentiary hearing on his motion to withdraw plea because the record does not conclusively refute his allegations; and (3) he is entitled to a *Sheppard*[1] hearing to determine whether he should receive conflict-free counsel for the evidentiary hearing. We agree with the defendant's position in all three respects and reverse.

---

[1]     *Sheppard v. State,* 17 So. 3d 275 (Fla. 2009).

The state's attempted first-degree murder charge against the defendant alleged that the defendant discharged a firearm and inflicted great bodily harm on the victim. Therefore, if convicted, the defendant faced a mandatory minimum sentence of twenty-five years in prison and a maximum sentence of life in prison. *See* § 775.087(2)(a)3., Fla. Stat. (2009) ("Any person who is convicted of a felony or an attempt to commit a felony listed in sub-subparagraphs (a)1.a.-q., regardless of whether the use of a weapon is an element of the felony, and during the course of the commission of the felony such person discharged a firearm or destructive device as defined in s. 790.001 and, as the result of the discharge, death or great bodily harm was inflicted upon any person, the convicted person shall be sentenced to a minimum term of imprisonment of not less than 25 years and not more than a term of imprisonment of life in prison.").

On the day that the defendant's trial was to begin, the state, on the record, offered to enter into a plea agreement with the defendant. Under the state's offer, the defendant would: (1) plead no contest to the crime as charged; and (2) waive his right to appeal the court's earlier order denying his motion to suppress his statement to the police. In exchange, the state would recommend that the court sentence the defendant to the mandatory minimum term of twenty-five years in prison.

A brief recess then occurred. The record suggests that during the recess, defense counsel presented the defendant with a written plea form. On the plea form, the defendant placed his initials next to the following pertinent statements:

- "I am pleading guilty to the charge of <u>Att. 1st Deg Murder (F1)</u>."

- "I understand that the maximum possible penalty provided by law is <u>Life (under 10/20/Life)</u>."

- "The minimum penalty is <u>96 mths SP</u>."

- "My guideline recommended range is <u>96 mths—LIFE</u>."

- "And my guideline permitted range is: _____."

- "I understand that that if the Court accepts my plea to the charge(s) listed above, my sentence will be <u>25 years State prison w/ 25 year min/man w/ 727 days credit</u>."

- "Other than the proposed sentence set forth above, no one has made any promises or guarantees to me nor has anyone

2

threatened me or in any way forced me to enter this plea; I am doing this freely and voluntarily[.]";

. . . .

- "I have not been threatened or coerced into this plea, and have not been promised any reward or favor for giving up my rights by anyone."

After the recess, defense counsel requested an opportunity to "state for the record why we are choosing to take a plea." The court granted the request. Defense counsel stated, in pertinent part:

> I do believe that his best interests are to take the negotiated resolution from the State because I believe that *the situation that may result at trial would not be as favorable to him especially given the limited options the Court would have on sentencing, given that the lesser included offenses would all lead to the main minimum mandatory sentence of life.*
>
> So that being said . . . all I am expressing to the Court is that [the defendant] has agreed to take this . . . plea offer and *I have given him whatever advice I can throughout this time based on that.*

(emphasis added). Even though defense counsel made the emphasized incorrect statement as to the minimum mandatory sentence, the record does not indicate that the state or the court corrected defense counsel.

Instead, the court proceeded to conduct its plea colloquy with the defendant. The colloquy's pertinent portions are as follows:

> Court: You are charged with one count of attempted murder in the first degree, that is *punishable by life.* You understand what you're facing here?
>
> Defendant:  Yes, sir.
>
> . . . .
>
> Court: My understanding is it is going to be an adjudication, 25 years in [a] Florida State Prison with 25

3

year minimum mandatory, credit for 727 days he has already served. Is that your understanding, sir?

Defendant: Yes, sir.

Court: Has anyone promised you anything other than what I just announced right here in open court?

Defendant: No.

Court: Anyone forcing you, threatening you or coercing you into taking this plea?

[Defendant does not respond.]

Court: You know what, I am not accepting the plea.

Defendant: No, no, I was thinking of my family that's all, nobody ain't force me, nobody ain't force me. Nobody ain't forced me.

Defense Counsel: The frustration is he is trying to balance out what his family's requests are versus perhaps what he may have individually wanted to do.

Court: Sir, I got 50 jurors sitting downstairs if you want to have a trial.

Defendant: Yes, I know, I am not trying to hold you up, your Honor, I'm sorry.

Court: I'm ready.

Defendant: Ain't nobody has forced me to do nothing, I'm free will.

Court: All right, no one is forcing you, threatening you or coercing you into changing your plea?

Defendant: No, sir.

. . . .

4

Court: I'm holding in my hand a form entitled Plea of . . . No Contest to Criminal Charges in Circuit Court. Do you recognize it?

Defendant: Yes, sir, I did.

Court: Are those your initials in front of each paragraph?

Defendant: Yes.

Court: Signature on pages 2 and 3?

Defendant: Yes, sir.

Court: Did you have an opportunity to read over that form in its entirety prior to initialing and signing it?

Defendant: Yes.

. . . .

Court: Do you have any questions about what is on the form?

Defendant: No.

(emphasis added).

The defendant proceeded to plead no contest to the charge. The court accepted the plea, found that the defendant entered the plea knowingly, intelligently, and voluntarily, and found that the defendant understood the nature of the charge against him and the consequences of his plea. The court then sentenced the defendant to the mandatory minimum sentence of twenty-five years in prison with credit for 727 days of time served.

Ten days after the plea and sentencing hearing, the defendant served a pro se motion to withdraw plea. In the motion, the defendant argued, in pertinent part, as follows:

Defendant[']s counsel told his client that if he did not [accept] the plea of 25 years[,] the Honorable Judge would call [trial] that afternoon and he would be found [guilty] and be sentenced to life in Florida prison. Going against what

5

the defendant wishe[d] to go to [trial], his counsel forced him to [accept] the plea [agreement]. If the court would have taken more time with the defendant to make sure taking a 25 year plea is what he really wanted[,] and not being [threatened] and forced into taking the plea[,] the defendant would have proceeded to [trial] like he wanted to do.

. . . .

*Upon arriving [in prison], the defendant learned that his counsel had[,] along with the court[,] misadvised the defendant of what he would [receive] if he proceeded to [trial].*
. . . The defendant did not understand what was happening and did not know what he was doing by listening to the [advice] of his counsel.

(emphasis added).

The state filed a response to the motion. In the response, the state argued only "that the court was thorough in its colloquy and explanation of the *maximum* penalties involved in this plea." (emphasis added).

The circuit court entered an order denying the defendant's motion without a hearing. Regarding the defendant's argument that his counsel "forced" him into accepting the plea offer, the court found that the defendant's plea form and the plea colloquy transcript, both attached to the order, conclusively refuted the defendant's argument. The court noted from the plea form the defendant's agreement that "[o]ther than the proposed sentence set forth above, no one has made any promises or guarantees to me nor has anyone threatened me or in any way forced me to enter this plea; I am doing this freely and voluntarily." The court also noted certain portions of the plea colloquy transcript (quoted above) in which the defendant acknowledged his understanding that the court would sentence him to prison for the minimum mandatory twenty-five years term of imprisonment, and that no one had promised him anything, forced him, threatened him, or coerced him into taking the plea. However, nowhere in the order did the court address the defendant's allegation that his counsel "misadvised [him] of what he would [receive] if he proceeded to [trial]."

This appeal followed. The defendant argues that the circuit court erred in summarily denying his motion to withdraw plea. According to the defendant: (1) his motion to withdraw plea was facially sufficient because it alleged that defense counsel misadvised him that if he

6

proceeded to trial and was found guilty, the court was required to sentence him to life in prison; (2) he is entitled to an evidentiary hearing on his motion to withdraw plea because the record does not conclusively refute his allegations; and (3) he is entitled to a *Sheppard* hearing to determine whether he should receive conflict-free counsel for the evidentiary hearing.

We review the circuit court's order for an abuse of discretion. *See Hamil v. State*, 106 So. 3d 495, 497 (Fla. 4th DCA 2013) ("We review a trial court's denial of a motion to withdraw a plea after sentencing for an abuse of discretion.").

We agree with the defendant's position in all three respects.

First, we conclude that the defendant's motion to withdraw plea was facially sufficient. That is, if defense counsel indeed advised the defendant that the court was required to sentence him to life in prison if he proceeded to trial and was found guilty, then defense counsel misadvised the defendant. *See* § 775.087(2)(a)3., Fla. Stat. (2009) ("[T]he convicted person shall be sentenced to a minimum term of imprisonment of not less than 25 years and not more than a term of imprisonment of life in prison."); *Woodly v. State*, 937 So. 2d 193, 197 (Fla. 4th DCA 2006) ("The allegation that counsel misadvised appellant that he would receive a life sentence if convicted is cognizable under rule 3.170(*l*).").

Second, we conclude that the defendant is entitled to an evidentiary hearing on his motion to withdraw plea because the record does not conclusively refute his allegations. *See id.* at 196 ("Where a defendant files a facially sufficient motion to withdraw his plea, he is entitled to an evidentiary hearing on the issue unless the record conclusively refutes his allegations."). The record indicates that, before the court began the plea colloquy, defense counsel explained that the reason why the defendant was taking the plea was because a guilty verdict "would not be as favorable to him *especially given the limited options the Court would have on sentencing, given that the lesser included offenses would all lead to the main minimum mandatory sentence of life.*" (emphasis added). Even though defense counsel made the emphasized incorrect statement as to the minimum mandatory sentence, the record does not indicate that the state or the court corrected defense counsel. Moreover, during the plea colloquy, the court never informed the defendant that if he proceeded to trial and was found guilty, then the court could have sentenced him anywhere from the mandatory minimum term of twenty-five years in prison to the maximum term of life in prison. Instead, the court told the defendant only that the charge of attempted murder in the

7

first degree was "punishable by life," and that he was entering his plea to receive "25 years in [a] Florida State Prison with 25 year minimum mandatory, credit for 727 days he has already served." Thus, given the foregoing record, the defendant is entitled to an evidentiary hearing on his motion to withdraw plea.

Third, we conclude that the defendant is entitled to a *Sheppard* hearing to determine whether he should receive conflict-free counsel for the evidentiary hearing. In *Sheppard*, our supreme court "outline[d] the procedure trial courts should follow when a represented defendant files a pro se rule 3.170(*l*) motion based on allegations giving rise to an adversarial relationship such as counsel's misadvice, misrepresentation, or coercion that led to the entry of the plea." 17 So. 3d at 286-87. Under this procedure:

> [T]he trial court should hold a limited hearing at which the defendant, defense counsel, and the State are present. If it appears to the trial court that an adversarial relationship between counsel and the defendant has arisen and the defendant's allegations are not conclusively refuted by the record, the court should either permit counsel to withdraw or discharge counsel and appoint conflict-free counsel to represent the defendant.

*Id.* at 287.

Our conclusions in this case are consistent with our recent opinion in *Thompkins v. State*, 120 So. 3d 66 (Fla. 4th DCA 2013). In *Thompkins*, the state charged the defendant with, among other things, three counts of first-degree murder with a firearm. The defendant later pled guilty to second-degree murder with a firearm. The defendant then filed a Florida Rule of Criminal Procedure 3.850 motion, in which he claimed, among other things, affirmative misadvice of counsel that if he were convicted of the first-degree murder counts as charged, the only possible sentence he could receive would be the death penalty. The circuit court summarily denied this claim based on the plea colloquy.

We reversed, reasoning: "[W]e find nothing in that colloquy which actually refuted this claim. The fact that the trial court advised [the defendant] that if convicted, he faced the *possibility* of the death penalty did not overcome his claim that his counsel affirmatively misadvised him that this was the only sentencing possibility if he were convicted." *Id.* at 67 (emphasis added). We thus remanded for either an evidentiary

hearing or attachment of portions of the record refuting the claim other than the portions of record already incorporated by the trial court. *Id.*

Although *Thompkins* involved a rule 3.850 motion while this case involves a motion to withdraw plea, the underlying legal basis for reversal to conduct an evidentiary hearing remains the same in both cases. In both cases, the record did not conclusively refute defense counsel's alleged misadvice that if the defendant proceeded to trial and was found guilty, the court was required to sentence him to the maximum penalty. *See also Boule v. State*, 884 So. 2d 1023, 1025 (Fla. 2d DCA 2004) ("[N]othing in the transcript of the plea hearing or otherwise contained in the record on appeal conclusively refutes [the defendant's] claim that his attorney told him he would definitely receive a life sentence if he rejected the plea offer and went to trial. Although the sentencing scoresheet reflects that [the defendant] was exposed to the possibility of a life sentence, the record does not reflect that such a sentence was a certainty. . . . Accordingly, we reverse the denial of [the defendant's] motion to withdraw plea and remand for the trial court to conduct an evidentiary hearing to resolve the motion.") (footnote omitted).

In reaching today's opinion, we distinguish two of our prior opinions, *Jones v. State*, 680 So. 2d 585 (Fla. 4th DCA 1996), and *Woodly v. State*, 937 So. 2d 193 (Fla. 4th DCA 2006).

In *Jones*, a defendant who qualified for habitual offender sentencing entered a plea bargain to a term of years sentence which did not contemplate any enhancement. During the plea conference, the court told the defendant that if it declared him to be a habitual offender, he "could be sentenced to life." The defendant stated he understood and did not have any questions about the sentence which the court could impose. The defendant later filed a rule 3.850 motion alleging his lawyer misadvised him, before entering the plea, that if found guilty as an habitual offender "you're never going to get out of prison because the judge is obligated to sentence you to life." The circuit court summarily denied the motion.

We affirmed. 680 So. 2d at 586-87. We concluded the defendant's acknowledgement that he understood the sentence and his failure to raise any questions refuted the defendant's claim that his plea was involuntary. *Id.* at 587. In a partial dissent, Judge Stevenson argued that, as he understood the claim, the defendant was alleging "defense counsel advised him that *if he proceeded to trial* and was then found guilty as [a] habitual offender, the judge would be obligated to sentence him to life imprisonment." *Id.* at 588 (Stevenson, J., dissenting in part).

According to Judge Stevenson, "[t]he trial judge's plea colloquy would not necessarily have cleared up an erroneous belief that the maximum sentence after a trial could be different; neither would the plea colloquy necessarily have prompted an additional inquiry from [the defendant] concerning the matter since it was not inconsistent with the advice he had allegedly been given." *Id.*

The instant case presents the scenario which Judge Stevenson contemplated. Here, the defendant has alleged that defense counsel misadvised him that, *if he proceeded to trial* and was found guilty, the judge would be obligated to sentence him to life imprisonment. In fact, defense counsel said on the record that the reason why the defendant was taking the plea was because a guilty verdict "would not be as favorable to him *especially given the limited options the Court would have on sentencing, given that the lesser included offenses would all lead to the main minimum mandatory sentence of life.*" (emphasis added). Even though defense counsel made the emphasized incorrect statement as to the minimum mandatory sentence, the record does not indicate that the state or the court corrected defense counsel. Moreover, during the plea colloquy, the court never informed the defendant that if he proceeded to trial and was found guilty, then the court could have sentenced him anywhere from the mandatory minimum term of twenty-five years in prison to the maximum term of life in prison. Instead, the court merely told the defendant that the charge of attempted murder in the first degree was "punishable by life," and that he was entering his plea to receive "25 years in [a] Florida state prison with 25 year minimum mandatory, credit for 727 days he has already served." Thus, to paraphrase Judge Stevenson, the court's plea colloquy here would not necessarily have cleared up an erroneous belief that the maximum sentence after a trial could be different; nor would the plea colloquy necessarily have prompted an additional inquiry from the defendant concerning the matter since it was not inconsistent with the advice he had allegedly been given and what was said on the record.

In *Woodly*, the state charged the defendant with robbery with a firearm, armed kidnapping, and attempted murder. On the morning of trial, the state, on the record, offered the defendant a plea deal of fourteen years in prison with a ten-year mandatory minimum sentence. The court asked what the potential penalties were, and the state informed that the defendant was "looking at life because of the robbery firearm as a principal." However, this was not a mandatory life sentence. The court then confirmed that the defendant's "potential penalty would be up to life discretionary with a ten year minimum mandatory" under the 10-20-Life law. The defendant said he would accept the state's offer.

During the plea colloquy, the court asked the defendant, "[H]as anyone, including your attorney, told you anything different than what I've told you here in open court?" The defendant said "no." Shortly after the sentencing, the defendant moved to withdraw his plea, alleging, among other things, that his attorney misadvised him "that if he did not take the negotiated plea, the trial judge would impose a life sentence after trial if he were convicted." The court summarily denied the motion without prejudice to the defendant filing a rule 3.850 motion.

We affirmed, concluding that the record conclusively refuted the defendant's allegations:

> In [the defendant's] presence, the prosecutor stated that the potential penalty was *up to* life imprisonment on each count. The court confirmed that the life sentence was discretionary and not mandatory. Further, through its questioning, the trial court confirmed that no one, including [the defendant's] attorney, had told [the defendant] anything different than what the court was informing him about his sentence. The trial court informed [the defendant] that if he proceeded to trial he was facing *up to* life imprisonment with a ten-year minimum mandatory on each count in the information pursuant to the 10-20-Life provision of the Florida Statutes. Based upon the transcript, [the defendant] was well aware that he was not facing a *mandatory* life sentence on the charges to which he pled guilty.

937 So. 2d at 197-98.

The record in *Woodly* differs from the record here. Here, neither the prosecutor nor the court stated in the defendant's presence that the potential penalty was *up to* life imprisonment on the count charged; the court never indicated that the life sentence was discretionary and not mandatory; and the court never confirmed that no one, including the defendant's attorney, told him anything different than what the court was informing him about his sentence. Thus, based upon the transcript, a question remains whether the defendant was aware that he was not facing a mandatory life sentence on the charge to which he pled guilty.

Based on the foregoing, we reverse the circuit court's order summarily denying the defendant's motion to withdraw his plea. We remand for the court to hold an evidentiary hearing on the motion. We also remand for the court to hold a *Sheppard* hearing to determine whether the defendant should receive conflict-free counsel for the evidentiary hearing.

*Reversed and remanded.*

STEVENSON and CIKLIN, JJ., concur.

*         *         *

**_Not final until disposition of timely filed motion for rehearing._**